Joanne YATVIN, Plaintiff,

v.

MADISON METROPOLITAN SCHOOL DISTRICT, a political subdivision of the City of Madison, a Wisconsin municipal corporation, Board of Education of the Madison Metropolitan School District and Donald A. Hafeman, individually and in his official capacity as Superintendent of Madison Metropolitan School District, Defendants.

Nos. 86-C-112-S, 86-C-238-S.

United States District Court, W.D. Wisconsin.

Feb. 20, 1987.

David E. Lasker, Buffett, Dew, Blaney, Olson & Lasker, Madison, Wis., for plaintiff.

Clarence Sherrod, Legal Counsel, MMSD, Gerald C. Kops, Isaksen Lathrop Esch Hart & Clark, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

The plaintiff, Joanne Yatvin, in these consolidated cases has alleged that the defendants, Madison Metropolitan School District, Board of Education of the Madison Metropolitan School District and Donald A. Hafeman, discriminated against her on the basis of sex when they failed to hire her as Assistant Superintendent of Instruction in January 1983.

Specifically, there are three causes of action relating to this charge of sex discrimination. Both the School District, to include the Board of Education, and Hafeman are claimed to have denied plaintiff her due process of law and equal protection of the laws under the Fourteenth Amendment to the Constitution. Enforcement of these constitutional rights is sought pursuant to Title 42 U.S.C. § 1983. The School District is also alleged to have been liable for discrimination on the basis of sex under 42 U.S.C. § 2000e et seq., Title VII.

In addition, plaintiff alleges that the School District failed to hire her for the position of Director of Curriculum and Staff Development in May 1983 because she filed a charge of sex discrimination after her failure to be appointed Assistant

Superintendent of Instruction. This claim for retaliation is grounded on 42 U.S.C. § 2000e, *et seq.*, Title VII.

All four causes of action set forth in these two consolidated cases were tried to the Court and jury commencing February 2, 1987, and continuing through February 12, 1987, with the jury to provide an advisory verdict for the two Title VII claims.

After plaintiff had rested her case, the defendants moved for directed verdict on the two § 1983 claims and dismissal of the two Title VII claims.

First the Court granted the motion of the defendant School District for a directed verdict on plaintiff's § 1983 claim. An examination of the evidence viewed in the light most favorable to the plaintiff determined that reasonable jurors could not differ on the conclusion that the defendant District did not discriminate against the plaintiff on the basis of sex. There was neither direct nor circumstantial evidence to infer a denial by the District of due process and/or equal protection of the laws to plaintiff. Specifically, there was no evidence to establish the existence of a policy, practice or custom that might have caused injury to the plaintiff. A screening committee followed a process which selected two qualified candidates and recommended them to defendant Hafeman for the appointment of one. The members of the committee believed they were making a decision based on the merits of the candidates who applied and not on any policy, either written or verbal, practice or custom which discriminated against women.

Even were the selection process flawed, that responsibility rested with the defendant Hafeman, who selected the committee members. Further, any failure to follow the sophisticated selection and screening procedures advocated by plaintiff's expert, Dr. Richard A. Gordon, would not in any way interfere with the committee's exercise of sound business judgment which carefully evaluated the candidates and recommended those who, in its judgment, were the best qualified. In no event were

the recommendations made on the basis of gender.

Second, the Court denied the motion of the defendant Hafeman to dismiss the § 1983 claim against him. Whether his selection of Dr. Jerry Patterson instead of plaintiff for the position of Assistant Superintendent of Instruction was based on considerations of sex was for the jury to determine. The Court concluded as a matter of law, however, that Hafeman was a policymaker of the District for purposes of this hiring decision. *Pembauer v. City of Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The District's § 1983 liability was wholly dependent upon Hafeman's liability. Further, since only Hafeman's motivation was placed in issue by the plaintiff, the District's liability under Title VII was also dependent on the evidence against him. Accordingly, the first question of the special verdict served as both a § 1983 liability verdict for Hafeman and the District, and an advisory verdict on the District's Title VII liability based on the actions of Hafeman.

Finally, the Title VII retaliation claim was submitted to the jury for its advisory verdict.

The Court now makes those findings of fact and conclusions of law concerning the two Title VII causes of action.

## DISCRIMINATION ON THE BASIS OF SEX

Plaintiff Joanne Yatvin is an adult female resident of Dane County, Wisconsin, and has been employed by the Madison Metropolitan School District since 1963. She was a teacher at various levels until 1974, when she was appointed Principal of Crestwood Elementary School, a position which she continues to hold.

The defendant Madison Metropolitan School District is a political subdivision of the State of Wisconsin, and is governed by the defendant Board of Education. The defendant Donald A. Hafeman is also an adult resident of Dane County, and was Superintendent of Schools for the defendant District from 1980 until July 1, 1986.

On December 6, 1982, a vacancy notice for the position of Assistant Superintendent of Instruction was posted. The position was open only to the administrative staff. Applications were invited from qualified individuals within the administration of the Madison Metropolitan School District.

On or about January 3, 1983, plaintiff made an application for the position of Assistant Superintendent of Instruction. She was found to be qualified for the position after an initial evaluation for minimum qualifications by Employee Services, a division of the defendant District. Three other persons applied: Dr. Glenn Borland, the Northeast Area Director; Dr. Sam Barosko, the Principal of Sennett Middle School; and Dr. Jerry Patterson, the Principal of Orchard Ridge Elementary School. They, too, were found to be qualified.

After the December 6, 1982 vacancy notice for the position was posted, a panel of eight members was selected by defendant Hafeman in accordance with the current personnel procedures. The panel was selected to evaluate and interview the candidates and to refer an unspecified number unranked to the defendant Hafeman. The members of the panel were as follows: Howard L. Sampson, the Assistant Superintendent for Business Services; Carolyn Taylor, the Principal of Memorial High School; Les Ritcherson, an Affirmative Action Officer for the University of Wisconsin; Connie Thompson, an elementary school teacher at Lindbergh Elementary School; Lynn Kilby, a parent of students in the District and a member of the Parent Curriculum Advisory Committee; Lee Gruenewald, the Director of Integrated Student Services; Jerry Johnson, the Principal of Marquette Middle School; and Peter Christiansen, Curriculum Coordinator for the District. The panel consisted of five males and three females, six of whom were administrative or instructional employees of the District with at least a master's degree, an affirmative action officer, and a parent, as aforesaid.

Phil Ingwell, of Employee Services, provided the Committee a brief and basic orientation at their first meeting, held December 20, 1982. He advised the Committee of its function and charge, referring briefly to the Affirmative Action Plan. Dr. Gruenewald was selected as Chair by the Committee, which reaffirmed its action at its second meeting.

After an individual review of the candidates' credentials, the Committee members met in early January 1983 and proceeded to evaluate and review the credentials of the candidates, formulate questions for the interview process, and prepare for the interview of each candidate with those questions selected.

At its third meeting the Committee members interviewed the candidates with those questions previously selected and ranked the candidates twice, each member ranking the candidate first through fourth. Points were awarded for each ranking. The person ranked first received four points, second received three points, third received two points, and fourth received one point.

After the question period and without discussion among the members, the first rankings were made. Jerry Patterson received the greatest number of points, 28; Glenn Borland the second greatest number, 24; the plaintiff the third greatest number, 16; and Sam Barosko fourth, receiving 12. The plaintiff was ranked first by none of the panel members, all of whom rated her behind Jerry Patterson. She was ranked second by three members, third by two members and fourth by three.

After a discussion among the panel members, to include the reasons for their rankings, the panel voted again. Jerry Patterson remained in first place with 28 points, Glenn Borland remained in second place with 27 points, the plaintiff remained in third place with 15 points, and Sam Barosko remained in fourth place.

Two of the three panel members who had rated plaintiff second rated her third on the second ranking. One who had ranked her fourth raised her to third. Again, all members rated plaintiff behind Patterson, and

all but one rated her behind Borland. Peter Christiansen, who spoke on behalf of plaintiff, continued to rate her number two.

The panel decided that Drs. Patterson and Borland, having received the highest number of points by a substantial margin, were the most qualified candidates and their names were submitted unranked to defendant Hafeman for appointment. Hafeman appointed Dr. Patterson to the position of Assistant Superintendent of Instruction.

In response to an inquiry from plaintiff as to why she had been eliminated from further consideration, she was informed by letter from Phil Ingwell, Assistant Director of Employee Services, of the Committee's consensus. She was advised that the applicants Patterson and Borland were better qualified and that she lacked district-wide management experience in the central office, which was critical to the position because of the district-wide responsibilities it entailed. The Committee was also concerned with the plaintiff's answers at the interview concerning the intricacies of a large and diverse instructional program.

At a subsequent meeting the letter was discussed and approved by the members in attendance. They also discussed a missing portion of plaintiff's credentials, which was brought to Ingwell's attention by the plaintiff. Six members indicated that the missing portion of the credentials, to include additional publications and awards, had been examined. One member, who had no recollection of reviewing the materials, indicated it would not have changed the ranking, as did another who was not certain of a review of the full credentials.

The plaintiff was clearly qualified for the position of Assistant Superintendent of Instruction. On the basis of education, accomplishment as a teacher and as elementary school principal, plaintiff possessed very impressive credentials. She is highly respected in the community, and to some extent has a national reputation. Plaintiff, however, did not at the time of her application have experience in central or district-wide administrative positions. There is nothing in the record to indicate that she was previously denied these positions for reasons of discrimination on the basis of sex. According to the description of the position posted, such experience was desired, although not required.

Jerry Patterson and Glenn Borland, the two candidates for the position who were referred to the defendant Hafeman, were also well qualified for the position. As with the plaintiff, they possessed doctoral degrees in the field of education. A significant portion of Patterson's experience had been in districts in other parts of the country, and he had most recently served as Principal of Orchard Ridge Elementary School. Prior to that position he had held the position of Curriculum Coordinator with responsibility for kindergarten through 12th grades in the area served by one of the District's four high schools. He had also served on district-wide committees, including the Instructional Services Division Cabinet.

Borland had most recently held the position of Northeast Area Director and was responsible for the instructional program and budget for one-half of the District. Both Patterson and Borland had the kind of district-wide administrative experience which the panel had found lacking in plaintiff's resume. They also interviewed better than did the plaintiff, and were found by the panel to be better qualified than she.

During the selection process for the position of Assistant Superintendent of Instruction there was an affirmative action plan or guideline in place which recognized a lack of women and minorities in the management class of District employees and required the appointment of a member of an under-represented group to such positions if they were equally qualified with the other candidates. The District Affirmative Action Officer accepted the selection process as being in accord with the District's Affirmative Action Plan, even though the plan was not referred to in the notice posting the position.

Defendant Hafeman, after interviewing Patterson and Borland and reviewing their

qualifications, determined Patterson to be more qualified. His selection of Patterson for the position was made on or about January 18, 1983, at which time he rejected plaintiff's request for further consideration because she was not recommended by the Committee.

## CONCLUSIONS OF LAW

Plaintiff's Title VII claim for sex discrimination is based on the District's failure to hire her for the position of Assistant Superintendent of Instruction because of her gender. Certainly, she has met her *prima facie* burden. She is a qualified member of an under-represented group who was not hired for a position. In addition, the evidence that she presented made it possible to infer that she was as well qualified as the two candidates advanced to the next stage of the process. *United States Postal Service Bd. of Governors v. Aikens*, 453 U.S. 902, 101 S.Ct. 3135, 69 L.Ed.2d 989 (1981). A male applicant was hired.

The Affirmative Action Plan required the appointment of a member of an under-represented group (female or minority) if the member is as qualified as the other candidates. The Affirmative Action Plan is essentially a tie-breaker. Therefore, unless a candidate from the under-represented group is found by the hiring authority to be equally qualified, the Plan is not relevant. The Committee did not so conclude, and Hafeman did not compare the plaintiff to Patterson and Borland because of the Committee's actions. Franzetta Callaway, the District's Affirmative Action Officer, had previously attested that the Plan had been followed. Her efforts at trial to recant her previous approval of the hiring process appear less than credible to the Court.

The Committee did not find plaintiff as qualified as were Patterson or Borland for several reasons. Plaintiff lacked district-wide experience and, in spite of her credentials, did not interview well.

The District's personnel policies contemplated that the hiring authority would choose from those candidates recommended by the Screening Committee. It was neither customary nor expected that candidates other than those recommended by the Committee would be considered for the position by the defendant Hafeman. There was no reason for appointment outside the Committee's recommendations where both Patterson and Borland were fully qualified.

From Hafeman's point of view, plaintiff was not on the list and could not be considered as well qualified as either Patterson or Borland. There is nothing in the record that Hafeman either knew the predelictions of the panel members or in any way attempted to influence their deliberations or decision.

The testimony of the panel members shows conclusively that they limited their considerations to the merits of the candidates. No rational open-minded assessment of credibility could lead to any other conclusion. The eight members rated plaintiff behind the successful candidate Patterson on both rankings. All but one rated her behind Borland, the second place candidate, on the final ranking. All Committee members, including Christiansen, were not impressed with plaintiff's interview. All except one believed Patterson and Borland to be substantially more qualified and apparently all believed plaintiff's lack of district-wide experience was a significant reason for her failure to be recommended.

■ These legitimate business reasons cannot be found to be pretextual.

■ The choice of a high level administrator from within the District was as advantageous to the plaintiff as to the other candidates. The in-district selection does not raise an inference of sex discrimination, but instead that a relevant pool of qualified candidates exists within the District.

■ The testimony of plaintiff's expert, Dr. Gorton, was offered to show that the Committee should have been better prepared to carry out its duties with instruction on the Affirmative Action Plan and on methods to eradicate subjective considerations. The Court finds this suggestion en-

tirely unpersuasive. The members of the Committee were, for the most part, experienced and sophisticated educational administrators. Those members who were not had no prior associations on which such subjective bias might be based. The Committee as a whole, as well as the members individually, had the expertise to exercise sound business judgment and did not need the kind of instruction suggested by Gorton. The Court is unable to conclude that the process was tainted with sex discrimination in any way. Able administrators should not be selected in a vacuum. There is nothing in the record to indicate that panel members were in any way adverse to plaintiff or partial to others at the time of their selection to the Committee by defendant Hafeman. Working with a candidate in the past should not exclude members from a well-advised panel where past association can provide an important insight into the candidates' qualifications. It is clear that plaintiff benefited from her past association with Peter Christiansen.

Nor is there anything in the record to indicate that defendant Hafeman opposed plaintiff's application or appointment in any way. If anything, Hafeman's assessment of the plaintiff would lead Committee members to believe he favored her appointment. He had written a comprehensive and highly favorable recommendation on behalf of plaintiff shortly before the position for which she had applied became available. That recommendation was in the plaintiff's file and was examined and evaluated by all Committee members. This certainly dispels plaintiff's theory that Hafeman was opposed to her.

There was, in fact, no evidence that the Committee's decision was based on anything but the merits of the candidates. Plaintiff admits as much. Her theory is that Hafeman chose Committee members who would be predisposed toward Patterson and Borland so that he would not be faced with the prospect of choosing between a male candidate and plaintiff. The Court had previously determined, at the time of the motion for summary judgment, that the theory was legally viable, but only if plaintiff could show that Hafeman's predisposition was based on considerations of gender rather than personal bias in favor of a particular male or against plaintiff. *See Johnson v. Univ. of Wis.-Milwaukee*, 783 F.2d 59, 63–64 (7th Cir.1986) (evidence of a less-than-honorable but nondiscriminatory motive irrelevant); *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 308 (2nd Cir.1986) (personal bias in favor of candidate romantically involved with hiring authority unfair but not violative of Title VII). *Bonnie J. Benzies v. Illinois Department of Mental Health*, 810 F.2d 146, 148 (7th Cir.1987):

> The trier of fact may find, however, that some less seemly reason—personal or political favoritism, a grudge, random conduct, an error in the administration of neutral rules—actually accounts for the decision. Title VII does not compel every employer to have a good reason for its deeds; it is not a civil service statute.

The conclusions reached by the Court in the previous paragraphs demonstrate that Hafeman was not biased against the plaintiff either personally or because she was a woman. If Hafeman was inclined to appoint Patterson regardless of qualifications, and the Court is not convinced that he was, the bias was personal and not based on gender. There is simply no evidence from which it might be inferred that Hafeman desired Patterson because of his membership in a class, and there is certainly no indication that plaintiff was excluded because of her gender.

Finally, plaintiff's statistical evidence is simply unconvincing. Based on a census sample of the local work force with five to six years of post-secondary education, Evelyn Freeman testified that women were under-represented in the higher administrative levels of the District. The class of employees in the higher administrative levels of the District, however, is fairly small. The local work force sample suggested by Ms. Freeman is not representative, since the persons actually hired for these positions, including the Assistant

Superintendent position, have a markedly higher education level than the sample used by plaintiff's expert, regardless of the minimal education requirements of the position in question. A more appropriate sample of the local work force offered by the defendants' expert showed the actual standard deviation to be substantially less than that found by Freeman.

Defendants also offered Exhibit 262, which showed that recent but still relevant hiring decisions produced a larger percentage of women actually hired than the percentage of women applicants for the positions. Plaintiff attempted to rebut this evidence by suggesting that many of these decisions concerned lesser administrative positions and that the more probative comparisons should be limited to the higher ranking positions. However, plaintiff's statistical evidence is subject to the same criticism. Furthermore, this argument lends support to the defendant's expert's decision to use a better-educated workforce sample. In any event, the hiring sample is fairly small, but it is extraordinarily important for the purposes of this case. It shows that upper level hiring decisions during Hafeman's tenure as Superintendent did not continue or exacerbate statistical disparities. Since it was plaintiff's theory that it was Hafeman's indirect machinations that were discriminatory, Exhibit 262 directly rebutted such an innuendo.

The Court agrees with the jury's determination that plaintiff failed to carry her burden of persuasion that she was a victim of discrimination based on sex.

## RETALIATION

On or about March 15, 1983, plaintiff Joanne Yatvin filed a complaint with the Equal Employment Opportunities Commission and other state and local equal opportunity agencies, alleging that her employer had discriminated against her on the basis of sex by failing to promote her to the position of Assistant Superintendent of Instruction, appointing Dr. Jerry Patterson to the position instead.

Shortly thereafter plaintiff applied for the newly created position of Director of Curriculum and Human Relations with the Madison Metropolitan School District. A job description had been formulated for the position on January 26, 1983, and the opening was advertised nationwide. A screening panel reviewed the credentials of the 89 candidates who met the minimum qualifications for the job and decided to interview ten candidates, including plaintiff. The panel considered the qualification of the candidates, interviewed the ten finalists, and decided to refer the top three candidates to the appointing authority for a final interview. One of the three withdrew from the process, so the fourth ranked candidate was referred. The referrals were not ranked. Plaintiff ranked tenth and was not referred. After Superintendent Hafeman and Assistant Superintendent Patterson interviewed the referred candidates, they decided that none had the capabilities to adequately perform the job as contemplated. One of the candidates from within the District, Herman Moody, was reassigned to the position of Director of Human Relations, and the new position of Director of Curriculum and Staff Development was created, to be filled from within the District also.

This new position of Director of Curriculum and Staff Development was posted on May 6, 1983, and four candidates from within the District, including plaintiff, applied for the position. The four, Tom Swenson, the Coordinator of Staff Development; Donna Chandler, Southwest Area Coordinator; Elaine Lohr, Curriculum Coordinator; and plaintiff, were screened by the Employee Services Division and were found to be minimally qualified. The Division then formed a screening panel to evaluate the candidates and determine which of the four would be referred unranked to the appointing authority which, in this case, would be Jerry Patterson. The screening committee was composed of Cindi Cunningham, a female who was a Learning Coordinator for the Madison Metropolitan School District; John Evers, a male who was a Curriculum Coordinator

for the Madison Metropolitan School District; Linn Hairston, a female who was a Madison Metropolitan School District School Psychologist; Rolland Willan, a male who was the Principal at Gompers Middle School of the Madison Metropolitan School District; Peg Sherry, a female who was a Talented and Gifted Program Staff Member for the Madison Metropolitan School District; Durward McVey, the male Principal of Randall Elementary School of the Madison Metropolitan School District; and Mary Ley, a female who is a parent of a student in the Madison Metropolitan School District and who was also on the Parent Curriculum Advisory Steering Committee. The committee formulated questions for the candidates and interviewed them. After the interviews the candidates were ranked from top to bottom in the following order, with points received: Tom Swenson (20), Elaine Lohr (18), Donna Chandler (18) and plaintiff (14). All four were referred to Patterson unranked.

Patterson evaluated the candidates under criteria which he developed from the job description and interviewed them with questions he prepared. Based on both the evaluation criteria and the interview, Elaine Lohr was rated highest, followed by plaintiff and Tom Swenson tied for second. Patterson rated Lohr better than plaintiff under four of the evaluation criteria: Administrative experience; experience in actually developing, implementing and evaluating staff development programs; ability to organize and manage complex educational programs; and integration of curriculum development and staff development activities. He articulated the reasons why he rated Lohr better than plaintiff in these areas in written comments made at the time. In general he found that Lohr's experience in the operation and participation of various staff projects, and administration of District-wide curriculum programs, including a Reading Needs project, had better prepared her to assume the duties represented by these considerations. He noted plaintiff's experience at the school level, and apparently recognized the fact that plaintiff had significant experience in the area of staff development despite the fact that her credentials did not address these matters, since he rated plaintiff only slightly behind Lohr in those areas. Plaintiff did have a Ph.D. in an area directly related to the responsibilities of the position and Lohr did not; and in addition had more direct administrative responsibilities than Lohr, whose experience was more diffused. Patterson rated plaintiff higher than Lohr with respect to academic preparation.

Patterson prepared ten interview questions for the candidates. From the ten questions, Patterson articulated reasons why Lohr provided better answers than plaintiff on six. On questions calling for views of the interrelationship between curriculum and staff development, for instance, Patterson found that plaintiff did not treat them as interrelated, and in fact once suggested that combining the two functions might not be successful. Plaintiff also admitted that she was not as familiar with the District's Curriculum Department as the other candidates. Patterson also faulted plaintiff for lack of specificity when compared with Lohr and for expressing her intent to work individually with school principals rather than subordinates at the Department level.

Patterson recommended Elaine Lohr for the position of Director of Curriculum and Staff Development. She was appointed based upon this recommendation by Superintendent Hafeman and the Board of Education.

## CONCLUSIONS OF LAW

Under Title VII, particularly 42 U.S.C. § 2000e–3, it is an unlawful employment practice to discriminate against an employee because he or she "has opposed any practice made an unlawful employment practice by this subchapter." Plaintiff charges that by appointing Elaine Lohr rather than her the Madison Metropolitan School District, through the acts of Jerry Patterson and Donald Hafeman, retaliated against her for filing a charge of sex discrimination concerning her application for

appointment as Assistant Superintendent of Instruction.

■ The elements of a *prima facie* case under § 2000e–3 are: (1) statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Griffin v. Board of Regents of Regency Univ.*, 795 F.2d 1281, 1294 (7th Cir.1986). The filing of a sex discrimination complaint with respect to the position previously sought by plaintiff is protected expression in that such a complaint represents opposition to an unlawful employment practice under Title VII. An adverse employment action followed inasmuch as plaintiff was not promoted to a position which she sought. It does not matter if the challenged employment practice does not actually violate Title VII, as the Court has found here by concluding that there was no discrimination on the basis of sex. It is sufficient if the plaintiff had a reasonable belief that there was such a violation. *Jennings v. Tinley Park Community Consolidated School District*, 796 F.2d 962, 967 (7th Cir.1986).

The third prong of the *prima facie* case is inextricably tied to the reason articulated by the District for the personnel decision made by the hiring authority, Jerry Patterson. Understanding that the function of the *prima facie* case is to present an inference or establish a presumption that the employer's decision was based on a discriminatory motive, plaintiff presented evidence tending to show that she was more qualified for the position of Director of Curriculum and Staff Development than the person chosen, Elaine Lohr. She also insinuated that Jerry Patterson, who had benefited by the alleged sexual discrimination of which plaintiff had complained earlier, could hardly be an objective decisionmaker when it came to judging her qualifications. She also presented the expert testimony of Dr. Richard Gorton, who stated that Patterson had an inherent conflict of interest under the circumstances of this case.

The District has argued that Patterson had determined that Elaine Lohr was the most qualified of the four candidates for the position on the basis of a comparison of the credentials and of the answers to interview questions posed to each candidate. Thus the District has articulated a legitimate nondiscriminatory reason for its failure to promote the plaintiff to the position of Director of Curriculum and Staff Development. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ It might therefore appear that the case turns on whether plaintiff was, in fact, better qualified than Elaine Lohr. This is clearly not true because Title VII does not require that a position be awarded to the candidate that the Court feels most qualified, but only that the decision among candidates not be discriminatory. *Burdine*, 101 S.Ct. at 1097; *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 366 (7th Cir 1981). The Court does not provide a civil service review of last resort.

■ Accordingly, unless the plaintiff's qualifications, when compared with the candidate chosen are superior to the extent that a conclusion by the hiring authority against plaintiff must be viewed as subterfuge, or other evidence suggests that the determining factor in an otherwise close case must have been a retaliatory motive, the plaintiff should not prevail. The Court must conclude that plaintiff has not rebutted the nondiscriminatory reason offered by the District.

Both the comparative credentials of the candidates and the interview performances of plaintiff and Elaine Lohr were offered by Patterson as the reasons for his conclusion that Lohr was more qualified. There is opportunity to argue about some of the resulting comparisons. For instance, on a scale of one to five (one being the highest), Patterson gave plaintiff a "one" for her academic preparation. Plaintiff had a doctoral degree in curriculum, the highest possible degree in a directly related field. Lohr was awarded a "two" for holding a masters degree in Secondary Reading and further studies toward a doctorate in Edu-

cational Administration. It could be argued that such a rating for Lohr was somewhat generous considering that her postgraduate work was not as clearly directed toward the responsibilities of the job in question as was plaintiff's.

Plaintiff also was rated higher than Lohr in communication skills, reflecting her extensive record of publication. But on four criteria, Patterson rated Lohr as more outstanding. With respect to experience and understanding of the interrelationship between curriculum development and staff development, Patterson noted that Lohr had years of experience in integrating the two while plaintiff had little district-wide experience in this regard and had emphasized the curriculum development side of the perceived responsibilities of the job. Patterson recognized that plaintiff's duties as a principal must have had a staff development component, but noted that her resume did not address the subject. He therefore gave Lohr the edge on credentials showing administrative experience in staff development due to her work in major district staff development projects and workshops. The same reasoning resulted in an identical assessment of the comparative experience in actually developing, implementing and evaluating such programs. Finally, Patterson rated Lohr over plaintiff in the ability to organize and manage complex educational programs. Plaintiff's experience was focused at the school level, while Lohr had exercised such responsibilities on a district-wide basis. On several other criteria the plaintiff and Lohr were rated even.

Patterson likewise rated the candidates on their responses to a prepared set of ten interview questions. Patterson rated Lohr's answers better than those of the plaintiff on six of the ten questions. Again, there might be argument about whether Lohr's responses were really better than those of the plaintiff. In particular, Patterson faulted plaintiff on several questions for emphasizing her school-based responsibilities and failing to address the district-wide concerns toward which the questions were directed. In listening to the interviews, which were tape recorded, the Court agrees that plaintiff did in fact emphasize her experience. However, the Court understood plaintiff's responses in this respect to be an attempt to convince the interviewer of the greater value of such experience as compared with the more removed experience of the central office administrator. In this light perhaps her answers should not have been faulted.

On other questions, however, Patterson's assessment of plaintiff's responses cannot be faulted. Plaintiff did in fact question the combination of curriculum development and staff development into one office and did not succeed in relating the functions as clearly or convincingly as Lohr managed to do. Plaintiff also admitted that perhaps she could not be as knowledgeable about the curriculum department as those who had worked in it for years (as Lohr had). As Patterson noted on two questions, plaintiff's responses lacked the organizational coherence displayed by Lohr.

Patterson concluded that plaintiff ranked third, behind Lohr and Tom Swenson on the interview; and tied for second with Swenson, and behind Lohr, on the assessment of credentials. He ranked plaintiff second, tied with Swenson and behind Lohr, overall.

The Court cannot conclude from an assessment of all the evidence that plaintiff must be considered more qualified than Elaine Lohr. The two were close enough, considering the posted responsibilities of the job and the required qualifications, that reasonable minds might differ. In fact, experts differed. So did school personnel who knew both very well. Superintendent Hafeman and Patterson himself had written glowing recommendations of the plaintiff at different times. The question, therefore, is whether Jerry Patterson recommended Elaine Lohr, rather than the plaintiff, because plaintiff had filed a discrimination complaint.

The Court finds that such a conclusion would be against the weight of the evidence. The thoroughness of Patterson's

comparative assessment of all the candidates, and not merely Lohr and plaintiff, suggests that his recommendation was based on the merits, not on a retaliatory motive. The Court finds that his comparisons were always reasonable, even if not what the plaintiff's witnesses or this Court might have concluded. They were based on the materials and interview responses before him. The most significant factor pertinent to the responsibilities of the job was the fact that plaintiff had questioned the advisability of combining the two functions into one office. As always, plaintiff's responses were admirable for their candor and honesty, but it is certainly reasonable to question the appointment of someone who does not share management's educational philosophy or emphasis. This is not to say that plaintiff is wrong, for this Court is in no position to espouse views on such a subject, but the difference of opinion reflected in this area certainly supports the District's conclusion that plaintiff was less qualified.

Perhaps most important, Patterson's testimony at trial concerning the considerations that influenced his conclusions was entirely credible.

Patterson's credibility was enhanced by the conclusions reached in three previous screening processes within a few months of his decision. Plaintiff was rated third of four candidates in the screening for Assistant Superintendent of Instruction; tenth of ten interviewed candidates for the position of Director of Curriculum and Human Relations; and fourth of four for the position at issue here where the screening panel passed on all four candidates unranked. In each of these processes panel members advised that plaintiff had interviewed poorly. In reviewing the interview tapes that were placed in evidence, the Court must agree with the assessment. Plaintiff's performance, while not poor in absolute terms, was in each case not what might be expected given her credentials and the excellence of her performance as a primary school principal.

It may, of course, be argued that Patterson manufactured his reasoning and the written evidence to conform to a predetermined recommendation. But the evidence does not support such an innuendo. Finally, the perceived conflict of interest that Dr. Gorton emphasized is just that—perceived. The fact that plaintiff had filed a sex discrimination complaint adds little, if anything, to the fact that Patterson received an appointment sought by the plaintiff. By competing for the position, plaintiff was suggesting that she was better qualified than Patterson. Her allegation of discrimination was not directed at Patterson, but at those who made the decision. There is virtually no reason to attribute an ethical dilemma to Patterson by virtue of plaintiff's complaint. There is, in addition, a policy reason not to do so. Patterson was to be the immediate supervisor to the person chosen for the position. There was, in effect, no one but Hafeman, who was accused of sex discrimination, in an appropriate position to make the decision if Patterson did not. To accord much probative value to a possible conflict of interest under these circumstances would put an employer in the untenable position of appointing a complaining employee to the next position applied for or facing an almost automatic second Title VII complaint.

The Court must conclude that Patterson had every reason to select Lohr for the position of Director of Curriculum and Staff Development. The Court further concludes that his action in failing to appoint plaintiff was not in retaliation for her previous filing of a claim of sex discrimination against the defendants.

## DAMAGES

Although the foregoing resolution of the liability issues in this case moots any claim for damages, the Court feels compelled to examine some of the damage issues addressed in the course of the trial.

It is clear that a monetary award in the nature of compensatory damages is not allowed under Title VII. However, back pay and/or retroactive promotion or reinstatement is presumptively proper. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Front pay may be proper in a pro-

motion case if the plaintiff will be unable to be promoted to an appropriate position because of the lack of vacancies. *See*, for example, *Thompson v. Sawyer*, 678 F.2d 257 (D.C.Cir.1982).

Thus, had plaintiff prevailed she would have been entitled to back pay in the amount of $32,193, (which includes interest) calculated by the difference between the pay she received as a principal and that of the position she was denied, together with any difference in fringe benefits.

The Court also accepts the parties' stipulation that it is not presently feasible to place plaintiff in the position of Director of Curriculum and Staff Development or an equivalent position at this time. Plaintiff would be entitled to front pay represented by the same differential for back pay until she is appointed to this or an equivalent position or until she departs from District employment.

However, the Court does not agree with the plaintiff that she has established any likelihood of continuing disharmony. Regardless of whether plaintiff suffered a retaliatory denial of promotion, there is simply no basis to conclude that plaintiff and other members of the District's administrative staff would be unable to work harmoniously in the future. Plaintiff was in no sense determined to be unqualified, and the record indicates that she was uniformly held in high esteem. The person allegedly responsible for discrimination on the basis of sex is no longer employed by the District, and plaintiff expressed admiration for his replacement. Plaintiff's contrary assertions in this regard are simply not credible.

Therefore, the Court's award of front pay would not be a lump sum award discounted to present value. The front pay would be in the nature of an order to forthwith adjust plaintiff's pay and fringe benefits to that of the position to which she was entitled, such adjustment to continue on an annual basis until her appointment to a comparable position or her departure.

Nor does the Court find any merit in defendant's argument that some accommodation in the back pay award is necessary to account for the different number of contract days for the two positions. The appropriate measure of back pay is the difference in pay between the positions. Had plaintiff been an outside applicant and been unable to find work during the interim, the entire salary would have been the appropriate award. The fact is, plaintiff continued to work at a lesser paying job during the interim and the failure to mitigate damages is not claimed.

Accordingly, upon the jury's verdict relating to the § 1983 causes of action and the foregoing findings of fact and conclusions of law relating to the Title VII causes of action,

### ORDER

IT IS ORDERED that plaintiff's complaints against the defendants are DISMISSED with prejudice and costs.

Let judgment be entered accordingly.