**Kevin M. KELSAY, Plaintiff,**

v.

**MILWAUKEE AREA TECHNICAL COLLEGE, Defendant.**

No. 93–C–536.

United States District Court, E.D. Wisconsin.

June 7, 1993.

Kevin M. Kelsay, pro se.

DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Pro se plaintiff, Kevin M. Kelsay, has filed a complaint against his former employer, the Milwaukee Area Technical College [MATC]. His complaint is accompanied by a petition to proceed in forma pauperis and a "Motion to Appoint Counsel." The petition to proceed in forma pauperis will be granted, and the "Motion to Appoint Counsel" will be denied.

In order to authorize a litigant to proceed in forma pauperis, the court must

make two determinations: first, whether the litigant is unable to pay the costs of commencing the action; and second, whether the action is frivolous or malicious. 28 U.S.C. §§ 1915(a) and (d). The court is obliged to give Mr. Kelsay's pro se allegations a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972).

■ Mr. Kelsay's affidavit of indigence indicates that he is presently employed by Legal Placement Specialists, Inc. "as a 'temporary' legal secretary currently placed at Johnson Controls, Inc.'s Product Safety Department." He receives $9.50 per hour. In 1992, he received unemployment compensation from the beginning of the year through November 1992, which provided income to him of $191.00 per week after paying child support. He presently has less than $200.00 in his bank account which he claims he needs for upcoming rent. Additionally, he owns a van, purchased for $300.00 in 1992, which is registered to his S-corporation, Creative Legal Solutions, Inc.

With respect to his current debts and obligations, Mr. Kelsay states that he owes money to the "Unemployment Compensation division, Wisconsin Dept. of Revenue, utilities, etc." He adds that "Combined these payments leave me with barely enough to pay rent and feed my twin daughters who reside with me more than 40% of the time." He is under court order to pay child support of $354.17 per month.

■ A litigant need not be totally destitute to qualify for indigent status under 28 U.S.C. § 1915(a). *See Adkins v. E.I. Du-Pont de Nemours & Co.*, 335 U.S. 331, 339, 69 S.Ct. 85, 89, 93 L.Ed. 43 (1948). The in forma pauperis statute, 28 U.S.C. § 1915(a), contemplates a standard of indigence that can be satisfied by persons other than those living in abject poverty. *See Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir.1980). Therefore, although Mr. Kelsay does have some limited financial resources, I conclude that he has satisfied the requirements of 28 U.S.C. § 1915(a) and is unable to pay the costs of commencing this action.

■ Mr. Kelsay must next demonstrate that his action has merit as required by 28 U.S.C. § 1915(d). An action is frivolous, for purposes of § 1915(d), if there is no arguable basis for relief either in law or fact. *See Denton v. Hernandez*, —— U.S. ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989).

Mr. Kelsay's statement of claim is repeated below in its entirety:

1. As a Limited Term Employee at MATC, I was entitled to retain the teaching position to which I had been appointed until such time as a permanent hiring took place. Instead, at the beginning of the second semester of the 1990–91 school year (on Martin Luther King, Jr. Day), MATC transferred a black male NON–APPLICANT into this position in violation of the Collective Bargaining Agreement then in effect between the teachers' union AFT (of which I am a member) and the administration of MATC. I filed a grievance and was reinstated but lost wages as a result of this incident.

2. In the first semester of the 90–91 school year, I applied for the position for which I was serving as the Limited Term Employee. A round of interviews were held. Recommendations were made as to whom to hire by the interview panel. These recommendations were rejected by MATC, allegedly due to their racial and/or sexual makeup. The panelists resigned en masse in protest of this action and a second panel was convened. This panel selected a lesser-qualified black female applicant in part to retaliate against the undersigned for grieving the actions complained of in paragraph one (1) above. The qualifications for this position were lowered with each subsequent posting of this position to enable a larger "pool" of targeted (i.e. non-white, non-male) applicants to be considered for this position. The position for which I was serving as a Limited Term Employee was offered to a black male applicant who alleges that he was offered this position primarily because of his race.

When he declined the position, he was fired.

Mr. Kelsay requests the following relief:

I would like to be compensated for my lost wages, for the sullying of my reputation as a teacher, and I would like my job back on a permanent basis with full tenure and other rights retroactive to the date of hire of my replacement, as well as additional sums for emotional distress caused by their discriminatory practices.

Mr. Kelsay's complaint does not declare his race. However, a decision of the State of Wisconsin Department of Industry, Labor and Human Relations attached to his complaint, as an addendum, reveals that Mr. Kelsay is a white male. That addendum also states that Carol Brady, a black female, was hired by MATC on August 26, 1991, to fill the permanent paralegal instructor position that Mr. Kelsay had applied for on August 1, 1990, and was qualified for, and had filled for MATC as a limited term employee from August 1990 through May 1991.

Mr. Kelsay's complaint, along with its addendum treated as part of his complaint, suggests that he is seeking relief for alleged reverse discrimination by the defendant, MATC, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Specifically, he appears to be contending that MATC discriminated against him because of his race and sex in failing to hire him for the permanent paralegal instructor job offered to Carol Brady.

42 U.S.C. § 2000e–2(a)(1) provides that "It shall be an unlawful employment practice for an employer . . . **to fail or refuse to hire** . . . any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's **race, color,** religion, **sex,** or national origin . . ." (emphasis added). This section "applies on the same terms to discrimination against males or whites as it does to discrimination against women or racial ethnic minorities." *Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 967 (3d Cir.1978) (citations omitted).

As a general rule, in a disparate treatment case under Title VII:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.,* at 802 [, 93 S.Ct., at 1824]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 804 [93 S.Ct., at 1825].

*Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To demonstrate a prima facie case of discrimination, the Supreme Court has stated that the plaintiff may do so "by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The *McDonnell Douglas* factors provide "an analytical framework which should be modified to accommodate different employment discrimination contexts." *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985).

In reverse discrimination cases, the first of the *McDonnell Douglas* factors has been interpreted to allow a majority plaintiff to establish a prima facie case of intentionally disparate treatment when "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker v. Baltimore and Ohio R.R.,* 652 F.2d 1012, 1017 (D.C.Cir.1981).

Mr. Kelsay has alleged enough facts to state a prima facie claim for reverse discrimination under 42 U.S.C. § 2000e–2. In

particular, in his complaint and addendum he alleges facts that he applied for the paralegal instructor position ultimately filled by Carol Brady, a black female, and that he had the necessary qualifications for that job but was not hired by MATC. Mr. Kelsay also alleges facts at least raising "the suspicion that the defendant is that unusual employer who discriminates against the majority." Accordingly, at this early stage of proceedings, I believe that Mr. Kelsay's complaint states an arguable claim for relief under 42 U.S.C. § 2000e–2, both in fact and in law, in satisfaction of the requirements of 28 U.S.C. § 1915(d). Therefore, Mr. Kelsay's petition to proceed in forma pauperis will be granted.

The United States marshal will be directed to serve a copy of the complaint, the summons and this order upon the defendant. However, Mr. Kelsay is reminded that he is required under Rule 5(a), Federal Rules of Civil Procedure, to serve upon the defendant, or if an appearance is entered by counsel, upon that attorney, a copy of *every* pleading, motion or other paper he files with the court. He should also retain a copy of each document for his own files. In addition, Mr. Kelsay is obligated to demonstrate that he has complied with the service requirements by filing a certificate of service with his papers. Rule 5(d), Federal Rules of Civil Procedure. Failure to comply with these instructions may result in the court's disregarding such pleadings, motions or other papers.

 Mr. Kelsay has also filed a "Motion to Appoint Counsel." There is no constitutional or statutory right to appointed counsel in a civil case. *DiAngelo v. Illinois Dept. of Public Aid,* 891 F.2d 1260, 1262 (7th Cir. 1989). Furthermore, a federal court cannot order an attorney to represent an indigent party, it may only request him to do so. 28 U.S.C. § 1915(d); *Mallard v. United States District Court,* 490 U.S. 296, 298, 109 S.Ct. 1814, 1816, 104 L.Ed.2d 318 (1989). In this circuit, attorneys are recruited to assist indigents "only when the cases are colorable, the facts [are] difficult to assemble, and the law is complex." *DiAngelo,* 891 F.2d at 1262.

 A prerequisite to considering whether to appoint counsel to an indigent person in a civil case is a demonstration by that person that reasonable, but unsuccessful, efforts were made to obtain counsel or that the indigent person was effectively precluded from making such efforts. *Jackson v. County of McLean,* 953 F.2d 1070, 1072–73 (7th Cir.1992). Mr. Kelsay indicates in his motion that he has made several such unsuccessful efforts to retain counsel.

Because Mr. Kelsay has already tried to obtain counsel and has failed, the next step in the analysis is to apply the standard set forth in *Farmer v. Haas,* 990 F.2d 319 (7th Cir. 1993); in such case the court of appeals held that counsel should be appointed only in response to this question: "[G]iven the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel ... [make] ... a difference in the outcome?" *Haas,* 990 F.2d at 322. The court of appeals discussed the application of the *Haas* standard by comparing it to the "simpler formulation" utilized by the court of appeals for the ninth circuit. In that circuit, the appointment of counsel to indigents in civil cases is reserved for "exceptional circumstances" as determined by "an evaluation of both the 'likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Id.* (citing *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir.1991)).

 In my opinion, this case is not a complex one. In a somewhat ironic twist, Mr. Kelsay states in his motion that he is a lawyer who was disbarred for a period of three years from the practice of law in Wisconsin. Nevertheless, he is not barred from appearing pro se, and thus he should be competent to handle this relatively straightforward case. Therefore, his "Motion to Appoint Counsel" will be denied.

### ORDER

Therefore, IT IS ORDERED that, pursuant to 28 U.S.C. § 1915(a), Mr. Kelsay's petition for leave to proceed in forma pauperis be and hereby is granted.

IT IS ALSO ORDERED that, pursuant to 28 U.S.C. § 1915(c), the United States mar-

shal be and hereby is directed to serve a copy of the complaint, the summons and this order upon the defendant.

IT IS FURTHER ORDERED that Mr. Kelsay's "Motion to Appoint Counsel" be and hereby is denied.