**Steven Todd O'PATKA, Plaintiff,**

v.

**MENASHA CORPORATION, a Wisconsin corporation, and Menasha Color Division, a Division of Menasha Corporation, Defendants.**

Civ. A. No. 94–C–635.

United States District Court,
E.D. Wisconsin.

March 6, 1995.

Thomas P. Lyons, Cunningham Lyons & Cabaniss, Milwaukee, WI, for plaintiff.

Robert Duffy & Gregg Formella, Quarles & Brady, Milwaukee, WI, for defendants.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

REYNOLDS, District Judge.

Steven Todd O'Patka ("O'Patka") claims that his employer, the Menasha Corporation and Menasha Color Division (together, "Menasha") discriminated against him and harassed him based on his sex, and intentionally inflicted emotional distress upon him. Menasha has moved to dismiss O'Patka's complaint, which the court shall do.

## I. ALLEGATIONS OF THE COMPLAINT

O'Patka began working at Menasha in September 1989 and, in June 1990, began working in the finishing department under the supervision of Bill Carlson ("Carlson"). O'Patka claims that Carlson regularly and unjustly reprimanded him, ignored his questions and requests for assistance, and treated him disrespectfully. He asserts that other employees who Carlson supervised were treated more favorably. While his complaint refers to "other employees," O'Patka qualifies what sounds like a number of people by stating "specifically Shannon Koenings," and not specifically comparing his treatment to that of anyone besides Shannon Koenings ("Koenings"), who is a female co-worker. Koenings and Carlson, he alleges, were sexually involved at all times relevant to this case.

Besides his general accusations of mistreatment, O'Patka specifically alleges that he was intentionally disciplined for the following incidents for which other employees (specifically Koenings) were not disciplined:

a. A written warning given to Plaintiff in September 1990 regarding an incident of walking on a conveyor belt to fulfill a request made by Carlson, while other employees, specifically Koenings, would regularly and repeatedly walk on conveyor belts without being disciplined;

b. A reprimand to Plaintiff in front of fellow employees following an occasion on which Plaintiff had used the bathroom, while other employees, specifically Koenings, were regularly allowed to take breaks unlimited by time or frequency;

c. A verbal censure of Plaintiff in front of fellow employees concerning the wearing of his wedding ring in violation of the jewelry policy, while other employees, specifically Koenings, who were in the immediate area and were also wearing jewelry, were not disciplined;

d. A threatened write-up for vehemently disagreeing during a crew meeting and for "uncivilized behavior," while other employees had threatened Carlson with tools and physical conduct but were not disciplined.

(Compl. ¶ 13.) O'Patka also alleges that he was passed up for promotion in favor of an unidentified employee "at the bottom of the seniority list." (*Id.* ¶ 15.)

O'Patka claims that Menasha management was repeatedly notified of Carlson's conduct toward him, but failed to reasonably investigate the claims or to take corrective measures. Further, after O'Patka allegedly reported Carlson's actions to Carlson and unnamed "other management personnel" at an unnamed time, he claims that the abuse and harassment became worse, with his requests for assistance and machinery repair being ignored and Carlson requiring far more quality checks on O'Patka than on Koenings.

O'Patka's complaint alleges that the "discrimination and harassment toward [him] was because he is a male and because of the personal, sexual relationship between his supervisor, Carlson, and a co-worker, Koenings." (Compl. ¶ 19.)

He claims that Menasha discriminated against him with respect to the terms and conditions of employment based on his sex in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, and specifically in violation of § 2000e–3 thereof. He alleges that Menasha created a hostile work environment and that they retaliated against him in response to his complaints of sex discrimination. O'Patka also brings state claims under the Wisconsin Fair Employment Act and the tort of intentional infliction of emotional distress.

## II. PROCEDURAL HISTORY

O'Patka filed a discrimination complaint with the Wisconsin Department of Industry, Labor and Human Relations, Equal Rights Division ("DILHR/ERD") on July 28, 1992. On August 19, 1992, O'Patka filed a complaint with the EEOC. On June 16, 1993, DILHR/ERD issued an initial determination that there was probable cause to believe Defendant Menasha Color Division violated the Wisconsin Fair Employment laws. The ERD conciliation process did not produce resolution, and on November 12, 1993, the ERD held a hearing, at which the administrative law judge stayed the case pending this action. The EEOC issued O'Patka a right-to-sue letter on June 1, 1994.

## III. ANALYSIS

This court will grant a motion to dismiss for failure to state a claim if it is clear that the plaintiff would not be entitled to relief even if the complaint's factual allegations were proven. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accordingly, this court must accept as true the plaintiff's factual allegations and must draw all reasonable inferences from the pleadings in favor of the plaintiff. *Gillman v. Burlington N.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989).

This case comes to this court pursuant to the court's federal question and pendant jurisdiction over this matter. *See* 28 U.S.C. §§ 1331, 1343, 1367.

### A. TITLE VII CLAIMS

O'Patka bases his theories of Title VII liability on differential and unfair treatment by his supervisor, Carlson, because Carlson was allegedly engaged in a paramour rela-

tionship with O'Patka's co-worker, Koenings. Because O'Patka has failed to state a claim under Title VII, his federal claims shall be dismissed.

### 1. Sex Discrimination under Title VII

■■ In order to state a Title VII sex discrimination claim, a plaintiff must follow the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which requires that the plaintiff meet the initial burden of establishing a "prima facie case" or be subject to dismissal. *See Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989). Normally, a plaintiff must allege four specific facts to make out a prima facie case of sex discrimination: (1) that he or she is a member of a protected class; (2) that he or she was performing the job in a manner consistent with the employer's legitimate business expectations; (3) that he or she suffered from an adverse employment action; and (4) that similarly situated employees of the opposite sex were treated more favorably. *See McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. at 1817 (race discrimination case); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1261–62 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994).

■■ O'Patka has failed to meet the first part of the *McDonnell Douglas* test. First, his "class" for purposes of this case must either be "men" or "people not in a romantic relationship with Carlson". The latter is simply not a protected class under Title VII, and cases based on favoritism to a third-party paramour do not state Title VII claims of sex discrimination. *See De Cintio v. Westchester County Medical Center*, 807 F.2d 304, 306 (2nd Cir.1986), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Piech v. Arthur Anderson & Co.*, 841 F.Supp. 825, 829 (N.D.Ill.1994) (rejecting "paramour" claim of sex discrimination and explaining that "law in [the Seventh Circuit] is that sex discrimination for Title VII purposes is limited to gender discrimination"); *Ayers v. American Tel. & Tel. Co.*, 826 F.Supp. 443 (S.D.Fla.1993) (favoring a paramour or disfavoring a non-paramour does not constitute a violation of Title VII); *see also Reed v. Shep-*

*ard*, 939 F.2d 484, 490–91 (7th Cir.1991) (disparate treatment based on factors other than an employee's status as a male or a female is not prohibited under Title VII); *Benzies v. Illinois Dept. of Mental Health & Developmental Disabilities*, 810 F.2d 146, 148 (7th Cir.), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987) (denial of promotion to person of particular sex not violation if motivated by personal favoritism or grudge); *Yatvin v. Madison Metro. Sch. Dist.*, 653 F.Supp. 945, 951 (W.D.Wis.1987), *aff'd*, 840 F.2d 412 (7th Cir.1988) (personal bias based on something other than gender is not actionable under Title VII). "Sex" discrimination means discrimination based on gender, not upon sexual activity or relationships. *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081 (7th Cir.1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985) (Title VII proscriptions of sex discrimination do not extend to transsexuality). In addition to this mound of caselaw on the matter, EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism notes:

> Not all types of sexual favoritism violate Title VII. It is the Commission's position that Title VII does not prohibit isolated instances of preferential treatment based upon consensual romantic relationships. An isolated instance of favoritism toward a "paramour" (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders.

EEOC Notice No. 915–048 (Jan. 12, 1990) (footnote omitted). This case offers no reason to stray from the case law and the EEOC interpretation on the matter—O'Patka cannot bring a disparate treatment sex discrimination claim based upon Carlson's alleged affair with Koenings.

If O'Patka means to assert that Carlson discriminated against him because of his gender, rather than because Carlson treats his paramour preferentially, O'Patka fails rather miserably. In reverse discrimination cases, the first *McDonnell Douglas* factor has been interpreted to allow a male plaintiff to establish a *prima facie case* of intentional dispa-

rate treatment if he alleges "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority." *See Kelsay v. Milwaukee Area Technical College,* 825 F.Supp. 215, 218–19 (E.D.Wis.1993) (*quoting Parker v. Baltimore and Ohio R.R.,* 652 F.2d 1012, 1017 (D.C.Cir.1981)); *see also Bishopp v. District of Columbia,* 788 F.2d 781, 786 (D.C.Cir.1986) ("White males, who as a group historically have not been hindered in the workplace because of their race or sex, are required to offer other particularized evidence, apart from their race and sex, that suggests some reason why an employer might discriminate against them" on account of their race or sex.)

O'Patka has not alleged any facts which infer that his gender, rather than Koenings' alleged relationship with Carlson, was the reason for Carlson's disparate treatment, much less background facts supporting a suspicion that Menasha or Carlson discriminate against men. O'Patka's supervisor was a man. O'Patka has failed to indicate that Carlson treated other men unfairly, or other women preferentially, or that any other managers were biased toward females. In fact, he has expressly stated that "other employees", presumably including other men, have not been discriminated against, and makes no reference to any gender-related comments or actions, or any unlawful "affirmative action" program or goal. (*See* Defs'. Br. at 6 n. 4, 7.) Further, O'Patka has not alleged that Koenings was less qualified than he. O'Patka also fails to allege *McDonnell's* third and fourth factor—that he satisfactorily performed his job and that "similarly situated" women at his workplace were treated differently from him. Instead, it is exactly the dissimilar situation that Koenings was allegedly in— that of being romantically involved with a supervisor—that allegedly caused Carlson to treat her better than O'Patka. While this may not be fair, especially if O'Patka was performing his job satisfactorily, it is not a Title VII violation. "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers," if the alleged discrimination is not because of race, color, religion, sex, national origin, citizenship, age,

or disability, employment discrimination statutes such as Title VII do not offer a remedy. *See Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560–61 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). O'Patka's sex discrimination claim under Title VII shall be dismissed.

**2. Sex Harassment under Title VII**

■ Title VII's prohibition of discrimination against individuals with respect to the terms, conditions or privileges of employment because of their sex makes it unlawful to require people to work in environments made hostile or abusive by gender discrimination. *Harris v. Forklift Sys.,* — U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Thus, "discriminatory conduct [which is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." *Id.* —— U.S. ——, 114 S.Ct. at 370.

■ O'Patka has failed to make out the prima facie case of sexual harassment required for his claim of hostile work environment based on sexual harassment, because O'Patka's harassment claim does not implicate gender, does not allege widespread managerial favoritism for those who accept sexual advances, does not allege that it was necessary for women or men to grant sexual favors to management for professional advancement, and does not allege that the workplace was fraught with sexual innuendo or overtones. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986) (Title VII hostile work environment claim is based on discriminatory *sexual* or racial harassment); *Drinkwater v. Union Carbide Corp.,* 904 F.2d 853, 860 (3rd Cir.1990) (Title VII hostile environment sexual harassment claim must show discrimination based on gender which is pervasive and regular, detrimentally affects plaintiff, and would detrimentally affect a reasonable person of the same sex in that position); *see also Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456, 461 (7th Cir. 1990) (*quid pro quo* sexual harassment when submission to sexual demands is a condition

of employment benefits); *Piech,* 841 F.Supp. at 829–30 (allegations that women who grant sexual favors to decision-makers receive professional advancement, and women who do not grant such favors do not, sufficient to state a *quid pro quo* sexual harassment claim). Rather, O'Patka alleges that Carlson engaged in a single, non-coercive sexual relationship between a co-worker and supervisor resulting in preferential treatment to her and not to O'Patka. Such accusations do not rise to the level of alleging a workplace permeated with sexually discriminatory "intimidation, ridicule, and insult" or even innuendo which has become "sufficiently severe or pervasive to alter the conditions of [O'Patka's] employment and create an abusive working environment." *Harris,* —— U.S. ——, 114 S.Ct. at 370 (quoting *Meritor,* 477 U.S. at 65, 67, 106 S.Ct. at 2404–05). Nor does it state a cause of action for *quid pro quo* sexual harassment.

The EEOC handbook states that widespread favoritism based upon the granting of sexual favors in the workplace can give rise to Title VII hostile work environment claims by both male and female colleagues who do not welcome this conduct, "regardless of whether any objectionable conduct is directed at them and regardless of whether those who were granted favorable treatment willingly bestowed the sexual favors." EEOC Notice No. 915–048 (Jan. 12, 1990). In such a case the EEOC has recognized that both women and men who find this activity offensive can establish a violation of Title VII if the conduct is "sufficiently severe or pervasive." *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). O'Patka has nowhere asserted that paramour relationships between supervisors and their underlings were widespread, or that the single relationship between Carlson and Koenings offended O'Patka because by being in a sexual relationship with Koenings, Carlson treated her unequally or implied that O'Patka or any other employee, male or female, would get ahead if they accepted Carlson's sexual advances. O'Patka has not even alleged that the atmosphere at Menasha was sexually charged or that Carlson flaunted his relationship.

O'Patka simply has not stated a Title VII hostile work environment sexual harassment claim, and so his proffered claim shall be dismissed.

### 3. Retaliation under Title VII

O'Patka has also failed to make out a prima facie case of retaliation under Title VII. Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e–3(a). To establish a prima facie retaliation claim, the plaintiff must allege that: (a) the plaintiff participated in Title VII proceedings or otherwise engaged in protected activity relating to his right to be free from unlawful discrimination or harassment; (b) there was subsequently an adverse employment action by the employer; and (c) there was a causal link between the protected activity and the adverse action. *Samuelson v. Durkee/French/Airwick,* 976 F.2d 1111 (7th Cir.1992).

A retaliation claim does not require a valid Title VII complaint, only a subjectively sincere and objectively reasonable belief that the actions challenged violated Title VII. *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457–58 (7th Cir.1994); *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1314 (7th Cir.1989). In determining the reasonableness of O'Patka's belief that he was being discriminated against, the court must look to the preexisting case law. *See Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1043 (7th Cir.1980). O'Patka has cited no cases supporting the theory that he had a reasonable belief that the actions he challenged violated Title VII. As noted in part A(1) above, *De Cintio,* as well as cases within this circuit and the EEOC guidelines, existed in 1990 to explain to O'Patka that he did not have a claim based upon his supervisor's preferential treatment of a paramour, and therefore his complaints were not objectively

reasonably directed toward activity prohibited by Title VII.

Further, O'Patka's brief fails to rebut Menasha's arguments that the complaint does not allege a causal connection between his complaint (or complaints of discrimination [1] to unnamed management personnel at unstated dates) and the alleged increase in Carlson's unfair treatment of him. The court agrees that the allegations of the complaint do not meet the *Samuelson* requirements. Given the presumption that employers who discriminate against men because of their gender are rare,[2] and that Congress' objective in enacting Title VII was to remove the barrier in employment opportunities to members of groups who have historically been hindered in the workplace because of their race or sex,[3] the court finds no reason to stray from the strict requirements of stating a *prima facie* case under Title VII.

The Title VII retaliation claim shall be dismissed.

## B. STATE LAW CLAIMS

Finally, Menasha has pointed out that the Wisconsin Fair Employment Act does not give rise to a private right of action, and that the tort claims O'Patka brings are based upon discrimination prohibited by that act and are barred by its exclusivity. While the court finds these arguments persuasive, it shall not rule on them, for now that the federal claims giving rise to jurisdiction are gone, the court shall release its pendent jurisdiction over those state law claims, and dismiss them without prejudice.

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss is GRANTED and the plaintiffs' Title VII claims are DISMISSED WITH PREJUDICE and the plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

---

1. In fact, it is not even clear from the complaint that O'Patka complained to management of sexual discrimination or sexual harassment, as opposed to simply unfair treatment by Carlson.

2. *See Kelsay*, 825 F.Supp. at 218–19; *Bishopp*, 788 F.2d at 786.

3. *See McDonnell Douglas*, 411 U.S. at 800, 93 S.Ct. at 1823.