Dee FARMER, Plaintiff–Appellant,

v.

Richard HAAS, Edward J. Brennan, and
L.E. Dubois, Defendants–Appellees.

No. 91–2484.

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 1993.

Decided April 2, 1993.

Darcy J. Bogenrief (argued), Winston & Strawn, Chicago, IL, for plaintiff-appellant.

Mark A. Cameli, Asst. U.S. Atty., Madison, WI (argued), for defendants-appellees.

Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

Dee Farmer, a federal prison inmate, brought this suit for damages against three members of the prison staff, charging deliberate indifference (in violation of the cruel and unusual punishments clause of the Eighth Amendment) to her need for medical and psychiatric treatment for the condition known as transsexualism (gender dysphoria). After this court in an unpublished order reversed the grant of summary judgment for the defendants, the case was tried for two days before a jury, which brought in a verdict for the defendants, precipitating this appeal.

■ Farmer, who is now 27 years old, is serving a long sentence for participation in an elaborate credit card fraud. She (the defendants say "he," but Farmer prefers the female pronoun and we shall respect her preference) is a transsexual. A transsexual is a person who considers himself to be of the male gender although he has the female sexual organs, or, more commonly, as in Farmer's case, considers herself to be of the female gender but has the male sexual organs. The disjunction between sexual identity and sexual organs is a source of acute psychological suffering that can, in some cases anyway, be cured or at least alleviated by sex reassignment—the complex of procedures loosely referred to as "a sex-change operation." Anne Bolin, *In Search of Eve: Transsexu-*

*al Rites of Passage* (1988); Erwin K. Koranyi, *Transsexuality in the Male: The Spectrum of Gender Dysphoria* (1980); American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* § 302.50 (3d ed. 1987); "Transsexualism," in American Medical Association, *Encyclopedia of Medicine* 1006 (Charles B. Clayman ed. 1989). There is a nascent jurisprudence of transsexualism, illustrated by Americans With Disabilities Act, 42 U.S.C. § 12211(b)(1); *Meriwether v. Faulkner,* 821 F.2d 408 (7th Cir.1987); *Ulane v. Eastern Airlines, Inc.,* 742 F.2d 1081 (7th Cir.1984); *White v. Farrier,* 849 F.2d 322 (8th Cir.1988); *Supre v. Ricketts,* 792 F.2d 958 (10th Cir.1986); *Phillips v. Michigan Dept. of Corrections,* 731 F.Supp. 792 (W.D.Mich.1990), aff'd without opinion, 932 F.2d 969 (6th Cir.1991); *Crosby v. Reynolds,* 763 F.Supp. 666 (D.Me. 1991), and *Doe v. McConn,* 489 F.Supp. 76 (S.D.Tex.1980).

Beginning at the age of 14, Farmer underwent estrogen therapy. Silicone breast implants followed. The usual next step would have been an operation to remove the male sexual organs and create, from penile tissue, a simulacrum of a vagina. However, for reasons that are unclear Farmer did not have the operation—at least not one performed by a surgeon. Farmer did have what the briefs call a "black market" operation to remove her testicles, but, odd as it may seem, the operation was unsuccessful. Yet, while retaining the male sexual organs, Farmer lived as a woman for five years before being imprisoned. The practice of the federal prison authorities, we were told at argument, is to incarcerate persons who have completed sexual reassignment with prisoners of the transsexual's new gender, but to incarcerate persons who have not completed it with prisoners of the transsexual's original gender. So Farmer was put in with male prisoners—but without incident, in happy contrast to *Meriwether v. Faulkner, supra.* At the trial, Farmer wore women's clothing.

Farmer claims that the defendants refused her repeated requests for medical

and psychiatric treatment. Eventually she was transferred to another prison, where she is receiving psychiatric treatment. For reasons that are unclear, she has been advised against continuing with estrogen therapy; and her male organs have yet to be removed. The issue in the trial was the denial of any treatment, not of some specific treatment, for Farmer's condition. She relied heavily at trial on written requests for treatment that were found in the defendants' files; the defendants countered with evidence that the requests were forgeries. Farmer called as an expert witness a nun to explain to the jury the emotional harm that a transsexual could suffer if denied medical or psychiatric assistance. The defendants did not and do not deny that transsexualism is not a frivolous "life style" choice but a genuine psychiatric disorder for which a prisoner is entitled to receive medical or psychiatric treatment.

The only question raised by the appeal is whether the district judge should have granted Farmer's motion to request a lawyer to represent her at the trial. 28 U.S.C. § 1915(d). Had the motion been made after *Jackson v. County of Maclean*, 953 F.2d 1070, 1072–73 (7th Cir.1992), the judge would have been required to deny it out of hand unless Farmer had made some effort to secure a lawyer in the private market. Her suit sought damages, and if it had merit she might be able to retain a tort lawyer to handle it on a contingent basis. That would be a preferable course to a judge's twisting some lawyer's arm to induce him to take a case that he would rather not take. If the plaintiff were unable to secure a lawyer in the private market, this might mean the suit had no merit, although alternatively it might mean that the plaintiff lacked the necessary information to obtain a suitable lawyer.

*Jackson* establishes a sensible threshold requirement, but one inapplicable here because Farmer could not know that it *was* a requirement, so no significance can be attached to her failure to seek (for all we know she *did* seek) private counsel. *Id.* at 1073. It is true that the statute itself confines the power of request to cases in which the litigant is "unable to employ

counsel" and that the Second Circuit had, long before *Jackson*, interpreted this to mean that the litigant must show that he tried and failed to find a lawyer on his own. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir.1986). See also *In re Lane*, 801 F.2d 1040, 1043 (8th Cir.1986). Until *Jackson*, however, our court had assumed that "unable to employ counsel" meant indigent, though an indigent might be able to obtain a lawyer on a contingent-fee basis if he had a substantial claim for money damages.

So the parties, disregarding *Jackson*, have argued the pros and cons of Farmer's request for counsel under the five-fold test that a panel of this court adopted in *Maclin v. Freake*, 650 F.2d 885 (7th Cir.1981) (per curiam). Since *Maclin* was decided, however, we have become more wary about multifactor tests, see, e.g., *Prussner v. United States*, 896 F.2d 218, 224 (7th Cir. 1990) (en banc); *Kenosha Liquor Co. v. Heublein, Inc.*, 895 F.2d 418, 419 (7th Cir. 1990); *Stevens v. Tillman*, 855 F.2d 394, 399 (7th Cir.1988), and, as commonly happens, the multiple factors of *Maclin v. Freake* collapse upon inspection. The first factor is whether the plaintiff's claim for relief has some merit—is "colorable," as lawyers like to say. Well, if the plaintiff doesn't even have a colorable claim, the case should be dismissed out of hand. There is no need to worry about counsel. The second factor is the plaintiff's ability to investigate the facts without the assistance of counsel and is actually an aspect of the third factor, the complexity of the evidence. Evidence must be obtained, and it must be presented. The fourth factor is the plaintiff's ability to represent himself and the fifth the difficulty of the legal issues. Obviously the fourth factor is dependent on the second and third (which are different stages of the same procedure), and also on the fifth because capabilities are relative to some task. The simpler the case, the less intelligent or experienced the plaintiff need be to handle it without the assistance of counsel.

█ *Jackson* shows that the *Maclin* test is not canonical, while the discussion in the

preceding paragraph shows that the necessary inquiry is simpler than *Maclin*'s multifactorial approach implies: given the difficulty of the case, did the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel have made a difference in the outcome? The resemblance to the performance and prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which governs the issue of ineffective assistance of counsel in criminal cases, is not an accident. In effect, a prisoner who argues that a lawyer should have been requested to represent him is arguing that he could not represent himself effectively. Although *Maclin v. Freake* has been cited approvingly by many courts, see, e.g., *Hodge v. Police Officers, supra,* 802 F.2d at 61, and adopted by the Tenth Circuit, *Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir.1991), most courts prefer a simpler formulation similar to that suggested above. Illustrative is *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.1991), where the court confined the exercise of the requesting power to cases presenting "exceptional circumstances" as determined by "an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" See also *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir.1984); *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir.1982) (per curiam).

■ We asked "did the plaintiff *appear* to be competent to try it himself" in our stripped-down alternative to the *Maclin* test because the judgment must be made by the district judge before trial. If the judgment was sensible when made, the fact that after the trial it is apparent that the plaintiff was not competent to try the case after all will not establish error. *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir.1985) (per curiam). Error is relative to what the judge reasonably could have known at the time he had to make his ruling. *Eads v. Secretary of Health & Human Services*, 983 F.2d 815, 817 (7th Cir.1993). Because of the particularistic character of the ruling and the fact that the district judge has the considerable advantage over us of having seen how the plaintiff handled herself in the pretrial proceedings, our review of the judge's decision not to request a lawyer for the plaintiff is deferential. We ask not whether he was right, but whether he was reasonable.

■ We cannot say that the judge was unreasonable here. When Farmer moved for counsel in April 1991, a week before trial, she had been litigating since February 1988 and had prosecuted a successful appeal to this court. The trial itself promised to be a straightforward swearing contest, the only issue being whether Farmer had or had not requested treatment. There were no legal issues and none of those "pitfalls that confront laymen in dealing with nonintuitive procedural requirements applied in a setting of complex legal doctrine" that led us to reverse a district judge's refusal to request a lawyer for a prisoner plaintiff in *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 429 (7th Cir.1991). Farmer argues that she needed a lawyer to procure a better qualified expert witness on transsexualism than a nun. But such an expert would have been relevant only to the assessment of damages, and the case never got that far. No doubt the main reason Farmer wanted an expert witness on transsexualism was to persuade the jury that it is a recognized medical disorder—that her request for treatment, therefore, was not a frivolous one. But the defendants had agreed that she was entitled to treatment, and Farmer does not argue that the judge failed to instruct the jury adequately on its duty to consider the issue of Farmer's alleged requests in the same light as if she were a diabetic or an amputee rather than a transsexual somehow arrested midway in the process of conversion from one gender to the other and desperately in need of some kind of medical or psychiatric treatment.

■ Besides being an experienced litigator, Farmer has a history of fraud, arguing the possession of an intelligence superior to that of a criminal who relies on brawn rather than brains. The transcript of the

trial discloses a shrewd cross-examination by Farmer of one of the defendants on the issue of forgery, bringing out all the contradictions and implausibilities in that defendant's testimony. It is true, as her appointed counsel in this court points out, that Farmer had difficulty coping with the objections that the defendants' counsel made to her direct testimony. But her counsel has made no effort to show that the objections were groundless, so that the presence of a lawyer to contest the objections would have made a difference. No doubt a good lawyer would have done better than Farmer, and might have won; but if this were the test, district judges would be required to request counsel for every indigent litigant. There is no constitutional or for that matter statutory right to counsel in federal civil cases—only a statute that authorizes the district judge to request, but not to compel, *Mallard v. United States District Court,* 490 U.S. 296, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *Jackson v. County of Maclean, supra,* 953 F.2d at 1071, a lawyer to represent an indigent civil litigant. The statute confides the matter to the district judge's discretion, which we shall override only in that extreme case in which it should have been plain beyond doubt before the trial began that the difficulty of the issues relative to the capabilities of the litigant would make it impossible for him to obtain any sort of justice without the aid of a lawyer and he could not procure a lawyer on his own. *Id.* at 1072; *Swofford v. Mandrell,* 969 F.2d 547, 551 (7th Cir.1992); *McNeil v. Lowney,* 831 F.2d 1368, 1371 (7th Cir.1987). That exacting standard is not satisfied in this case.

AFFIRMED.