45 F.3d 432
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Tyrone STRICKLAND, Plaintiff-Appellant,
v.
PONTIAC CORRECTIONAL CENTER, et al., Defendants-Appellees.
 No. 94-1167.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 20, 1994.*
Decided Jan. 4, 1995.
 
 Before FAIRCHILD, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Tyrone Strickland appeals the district court's grant of summary judgment in favor of the defendants in this action brought under 42 U.S.C. Sec. 1983. Strickland, a state prisoner, alleged that his constitutional rights were violated by various Pontiac Correctional Center officials.[1] Strickland claimed that officials at the Pontiac Correctional Center acted with "deliberate indifference" to his medical needs by denying him necessary medical care and subjecting him to "cruel and unusual" conditions of confinement through poisoning, drugging, and performing experiments upon him. On appeal, Strickland reiterates these claims and argues that genuine issues of material fact exist making summary judgment by the district court inappropriate. Strickland also argues that the district court erred in denying his various discovery motions, motions for physical examinations, and motion for appointment of counsel.
 
 
 2
 In regard to Strickland's discovery motions and motions for physical examinations, we will not reverse the district court's decisions limiting the manner or course of discovery absent a clear showing of abuse of discretion. Jurcev v. Central Community Hospital, 7 F.3d 618, 627 (7th Cir.1993); Ross v. Black & Decker Inc., 977 F.2d 1178, 1185 (7th Cir.1992); cert. denied, 113 S.Ct. 1274 (1993). We find that the district court did not abuse its discretion. Nor do we find error in the denial of Strickland's request for the appointment of counsel. In deciding whether to appoint counsel the district courts are guided by such factors as outlined in Maclin v. Freake, 650 F.2d 885, 887-889 (7th Cir.1981) and its progeny. See Farmer v. Haas, 990 F.2d 319, 321-322 (7th Cir.1993), cert. denied, 114 S.Ct. 1970 (1994). Here, the magistrate judge explicitly considered the Maclin factors and did not find that Strickland's case warranted a request for counsel. We agree. Finally, we agree with district court's disposition of this case on summary judgment and AFFIRM for the reasons stated in the attached order.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 3
 Tyrone Strickland, Plaintiff,
 
 
 4
 v.
 
 
 5
 Howard Peters, et al., Defendants.
 
 No. 90-2280
 ORDER
 
 6
 The plaintiff, a state prisoner, has brought this civil rights action pursuant to 42 U.S.C. Sec. 1983. The plaintiff claims that the defendants, various Pontiac Correctional Center officials, have violated the plaintiff's constitutional rights by acting with deliberate indifference to his medical needs and by subjecting him to "cruel and unusual" conditions of confinement. More specifically, the plaintiff alleges that the defendants have poisoned, drugged and experimented on him, as well as denied him needed medical care. This matter is before the court for consideration of the defendants' motion for summary judgment. For the reasons stated in this order, the motion will be allowed.
 
 
 7
 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. Beraha v. Baxter Health Corp., 956 F.2d 1436, 1440 (7th Cir.1992).
 
 
 8
 However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. First Ind. Bank v. Baker, 957 F.2d 506, 507-08 (7th Cir.1992).
 
 FACTS
 
 9
 The plaintiff is a state prisoner, confined at the Pontiac Correctional Center at all times relevant to this action. The defendant Howard Peters is the prison's former warden. The defendant William Goskie is the Superintendent of Pontiac's segregation unit. The plaintiff also sues the Illinois Department of Corrections, as well as the estate of Howard Mueller, the deceased staff physician at Pontiac.
 
 
 10
 The following facts are uncontested: Between May 2, 1988, and August 31, 1988, the plaintiff received medical treatment at the Pontiac Health Care Unit for conjunctivitis, a rash on his back, headaches, and foot fungus. From September 1, 1988, to January 10, 1989, the plaintiff was treated for the rash on his back, headaches, and perceived problems with his diet. From January 1, 1989, to January 10, 1989, the plaintiff received care for muscle spasms, cramps and kidney pains.
 
 
 11
 At a January 10, 1989, meeting with Dr. Mueller, the plaintiff complained of anxiety, kidney cramps, upset stomach and excessive gas. The plaintiff attributed his symptoms to the meat in his diet. After examining the plaintiff, the doctor ordered a chest x-ray, urinalysis, a complete blood count, and a panel of blood chemistries. The examination and laboratory tests revealed no abnormalities.
 
 
 12
 From January 18, 1989, to February 9, 1989, the plaintiff received additional treatment in the medical unit for his headaches. The plaintiff again expressed dissatisfaction with his diet. From February 25, 1989, to March 31, 1989, the health unit staff provided care for a scratchy throat and for back pain.
 
 
 13
 From April, 1989, through June, 1989, the plaintiff was seen by medical personnel for back, stomach and leg pains, headaches, a sore throat, an ingrown toenail, athlete's foot, and a rash on his hands. On several occasions, the plaintiff refused medical treatment for his complaints. Additional x-rays of the plaintiff's lumbar spine were taken and appeared normal.
 
 
 14
 From July, 1989, to September, 1989, the plaintiff received medical treatment for a sore neck, back pain, and athlete's foot. X-rays of the plaintiff's left knee showed no abnormalities.
 
 
 15
 From October, 1989, to December, 1989, the medical staff treated the plaintiff for athlete's foot, stiffness in his calves and neck, eye pain, and back pain. Between January, 1990, and March, 1990, the plaintiff went to the health care unit for help in alleviating his headaches and neck and back pain.
 
 
 16
 On April 6, 1990, the plaintiff told medical personnel that he had an ongoing chronic infection in his body. However, the doctor who examined the plaintiff found no physical manifestations to support the plaintiff's worries.
 
 
 17
 Also in April, 1990, Dr. Mueller examined the plaintiff to determine if he had suffered a heart attack, as the plaintiff claimed. The plaintiff further expressed his fear that an unknown, "major disease" was killing him. The plaintiff described no symptoms other than feelings of anxiety and tension. The plaintiff's physical examination showed no abnormalities and his electrocardiogram was normal. Moreover, urinalysis, blood chemistry paneling, a complete blood count, thyroid function tests, and tests for coronary risk factors revealed no problems. The plaintiff received medication to relieve his anxiety.
 
 
 18
 In the course of their ongoing treatment of the plaintiff's various health woes, the health care staff provided him with numerous ointments and anti-fungal creams, prescription and over-the-counter drugs, eyeglasses, special soaps, pain relievers, and other medical aids. [The parties discuss the plaintiff's maladies and treatment only through January, 1990.]
 
 DISCUSSION
 
 19
 Even viewing the record in the light most favorable to the plaintiff, the court finds no triable issue as to whether the defendants acted with deliberate indifference to the plaintiff's serious medical needs. The plaintiff received extensive treatment for his numerous medical complaints, and the record suggests that the plaintiff is a hypochondriac. There is no evidence whatsoever to support the plaintiff's contention that the defendants have attempted to poison or otherwise harm him. Accordingly, the defendants' motion for summary judgment will be granted.
 
 
 20
 In order for a prison inmate to prevail under 42 U.S.C. Sec. 1983 on a claim of medical mistreatment, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The standard of deliberate indifference was recently reaffirmed in Hudson v. McMillian, 112 S.Ct. 995, 1000 (1992) ("society does not expect that prisoners will have unqualified access to health care"); see also Wilson v. Seiter, 111 S.Ct. 2321 (1991). The indifference to medical needs must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. Estelle; Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir.1991).
 
 
 21
 Here, no reasonable person could find that the defendants acted with deliberate indifference to the plaintiff's serious medical needs. The plaintiff's voluminous medical records show that he was seen over one hundred times by Pontiac medical personnel between May, 1988, and December, 1989, alone. The plaintiff received comprehensive treatment for his myriad medical complaints. Furthermore, extensive tests were administered to determine the cause of the plaintiff's more mysterious ailments; doctors found no physical indications to explain those complaints.
 
 
 22
 Even assuming that the plaintiff did have an arguably "serious" medical condition, the record does not support an inference that the defendants acted with deliberate indifference to the plaintiff's needs. Medical malpractice is not a proper basis for a lawsuit under 42 U.S.C. Sec. 1983. Estelle, 429 U.S. at 106. Although the many health officials who saw the plaintiff were unable to diagnose or alleviate the source of some of his alleged health woes, the plaintiff received substantial medical attention. The plaintiff's dissatisfaction with prescribed treatment actually received is not actionable under the civil rights statutes. Benson v. Cady, 761 F.2d 335, 341 (7th Cir.1985).
 
 
 23
 The defendants likewise are entitled to judgment on the plaintiff's conditions-of-confinement claim. The plaintiff's declaration that the defendants have performed medical experiments on him and poisoned him is completely unfounded. Conclusory allegations alone are insufficient to defeat a motion for summary judgment. Valentine v. Joliet Township High School Dist. No. 204, 802 F.2d 981, 986 (7th Cir.1986). The plaintiff must offer affirmative evidence which supports his allegation, sufficient for a jury to make a verdict in his favor. Id.
 
 
 24
 In the case at bar, the plaintiff has not met his burden. The defendants' expert has examined the plaintiff's medical records and found no signs of experimentation, nor of food or gas poisoning. The plaintiff's bald assertion to the contrary appears to be entirely speculative and groundless.[1] The record could not support a finding that the plaintiff has been the victim of poisoning for the past four years.
 
 
 25
 In sum, the court finds that there is no genuine dispute as to any material fact and concludes that the defendants are entitled to judgment as a matter of law. The record does not raise an inference that the defendants have acted with deliberate indifference to any serious medical need of the plaintiff. Even assuming that the plaintiff did had a "serious" medical condition (a matter not supported by the record), no reasonable person could find that his treatment has been so deficient as to amount to a denial of essential medical care. Furthermore, there is no triable issue as to whether a conspiracy exists among prison officials to poison or otherwise harm the plaintiff. For the foregoing reasons, the defendants' motion for summary judgment will be granted.
 
 
 26
 IT IS THEREFORE ORDERED that the defendants' motion for summary judgment (docket # 78) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed.R.Civ.P. 56. The case is terminated. The parties are to bear their own costs.
 
 
 27
 Enter this 14th day of December, 1993.
 
 
 28
 --------/s/ Harold A. Baker
 
 
 29
 --------HAROLD A. BAKER
 
 United States District Judge
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral arguments would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Appellant has filed a statement requesting oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 The defendants in this case are: Howard Peters, the former warden of the Pontiac Correctional Center; William Goskie, superintendent of the segregation unit at the Pontiac Correctional Center; the Illinois Department of Corrections; and the estate of Howard Mueller, the deceased staff physician of the Pontiac Correctional Center
 
 
 [1]
 The plaintiff has submitted affidavits in which he maintains that he has been "poisoned," and that a "germ-war" has been waged against him. However, the affidavit is neither based on personal knowledge, nor would the plaintiff's factually unsupported assertion be admissible as evidence. See Fed.R.Civ.P. 56(e). The plaintiff's subjective belief that prison officials are subjecting him to dangerous contaminants flies in the face of medical evidence and common sense