134 F.3d 374
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Darrell B. McNARY, Plaintiff-Appellant,
v.
Donald NORMAN, et al., Defendants-Appellees.
 No. 96-3421.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 17, 1997.*
Decided Jan. 6, 1998.
 
 1
 Before FLAUM, RIPPLE and WOOD, JJ.
 
 ORDER
 
 2
 Darrell B. McNary, while an inmate at the Maximum Control Complex (MCC) in Westville, Indiana,[1] brought a pro se action, pursuant to 42 U.S.C. § 1983, against numerous correctional officers.[2] Mr. McNary alleged that his Eighth Amendment right was violated when he was forcefully removed from his cell by correctional officers. After a bench trial by a magistrate judge, the district court determined that Mr. McNary's Eighth Amendment right was not violated.[3] On appeal Mr. McNary argues that the district court: (1) improperly declined Mr. McNary's motion for the appointment of counsel; (2) improperly determined that the in forma pauperis (IFP) statute, 28 U.S.C. § 1915, did not entitle Mr. McNary to waiver or payment of witness fees; (3) committed clear error in finding that he had not been beaten by prison employees in violation of the Eighth Amendment; and (4) improperly dismissed his claims against two officers. We affirm.
 
 
 3
 In 1982, Mr. McNary began serving a 35-year term of imprisonment for inflicting serious bodily injury during a robbery. When he was transferred to the MCC on October 18, 1993, he was placed in a "dry cell" for a three-day period to ensure that he did not possess any contraband. On October 19, 1993, at about 7:00 a.m., a bed inspection team determined that Mr. McNary's bed was not properly made and confiscated his "bed roll."[4] At around 8:30 a.m., Mr. McNary requested that Sergeant Lee talk with him about the removal of his bed roll. Sergeant Lee informed Mr. McNary that his bed had not been made and ordered him to "cuff up."[5] When Mr. McNary did not comply by placing his hands through the open cuff port and instead attempted to say something, Sergeant Lee slammed shut the cuff port and told Mr. McNary that he had refused to cuff up. As Sergeant Lee left Mr. McNary's section of the pod, Mr. McNary asked him to come back and stated, "I didn't refuse to cuff up." Sergeant Lee advised Lieutenant Newson, the shift commander, that Mr. McNary had refused to cuff up. Lieutenant Newson, in accordance with MCC policy, called for the assembling of several officers, collectively referred to as an "extraction team," to remove Mr. McNary from his cell.
 
 
 4
 At approximately 9:07 a.m., a five member extraction team consisting of Officers Norman, Brown, Ware, Smith, and Samardzich, was assembled by Sergeant Staples, the assistant shift commander. Additionally, Officer Haas was assigned to videotape the extraction process. The extraction team, accompanied by Sergeant Staples, Officer Haas, and Nurse Johnson, proceeded to Mr. McNary's cell. When the team entered Mr. McNary's cell he dove underneath his bed frame and placed his arms under his body. The officers pulled Mr. McNary out from under the bed, placed him in "trip gear" (handcuffs and leg shackles), and took him to an empty cell, where he was placed in restraints for two hours for resisting the extraction. Sergeant Staples then asked Mr. McNary whether he wanted to see the nurse or receive medical care, but he did not respond. On the next day, Mr. McNary was interviewed for the facility intake health screen. The medical record entry for this date does not reflect that he complained of any physical injuries. Mr. McNary did not seek medical treatment for injuries allegedly received during the extraction until October 27, 1993.
 
 
 5
 At trial, Michael Scott, administrative assistant to the superintendent, testified that it was policy at MCC to videotape all forced cell extractions and have them reviewed by a shift commander to determine if any improprieties occurred. The videotape of Mr. McNary's extraction was turned over to Lieutenant Newson for review. Officer Norman observed Lieutenant Newson viewing this tape, however Lieutenant Newson died on December 25, 1994, and the prison officials subsequently have been unable to locate this tape, which included several other cell extractions. Scott testified that, once a tape was filled with footage of extractions, it would be turned over to him so that he could log the receipt of the tape on his computer and retain the tape in a locked storage cabinet. Scott testified that, based on his records, he did not receive the tape containing the extraction of Mr. McNary.
 
 
 6
 Mr. McNary's version of his extraction differed from the findings of the magistrate judge and district court, as well as the testimony of the defendants. Mr. McNary stated that two officers located outside of the building warned him that he better watch out for the extraction team. Although Mr. McNary admitted that he dived under his bed, he testified that he did so because he feared that he would be beaten like another prisoner had the previous day, and hoped that the team would just pull him out and cuff him. The real difference in stories stems from Mr. McNary's assertion that once he had been pulled out from under the bed, Officer Norman pounded him in the face and slammed his head into the floor several times. Mr. McNary argues that he received a lump on the left side of his forehead and several minor cuts from being beaten by Officer Norman.
 
 
 7
 The magistrate judge found the testimony of the defendants more credible than that of Mr. McNary. Additionally, the magistrate judge noted that Mr. McNary's claim that he had been beaten was contradicted by the apparent absence of any documentation of a significant injury in his medical records and his failure to request medical treatment when offered after he was removed from his cell.
 
 I. MOTIONS FOR APPOINTMENT OF COUNSEL
 
 8
 Mr. McNary first argues that the district court abused its discretion in denying his request for the appointment of counsel because he has a speech impediment that causes involuntary pauses in his speech.[6] Although civil litigants do not have a constitutional or statutory right to counsel, the district court has the discretion pursuant to 28 U.S.C. § 1915(e) to request attorneys to represent indigents in appropriate cases. Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir.1995). This court will reverse a district court's refusal to appoint counsel as an abuse of discretion "if, given the difficulty of the case in relation to the petitioner's competence to represent himself, the petitioner could not have obtained justice without the aid of a lawyer, could not have obtained a lawyer on his own, and would have had a reasonable chance of winning his case had he had a lawyer." Dellenbach v. Hanks, 76 F.3d 820, 823 (7th Cir.), cert. denied 117 S.Ct. 237 (1996).
 
 
 9
 The appointment of counsel in this case was unnecessary because the facts were relatively straightforward and the legal issues uncomplicated. Additionally, Mr. McNary was able to present a clear complaint, conduct interrogatories, and display a familiarity with the legal system that demonstrated his capability of proceeding with his case in a non-jury trial. Appointed counsel is also less necessary in a case such as this that involves a "straightforward swearing contest." Farmer v. Haas, 990 F.2d 319, 322 (7th Cir1993).
 
 
 10
 Mr. McNary also argues that the magistrate judge exceeded her authority when she construed Mr. McNary's objection to the denial of appointment of counsel as a motion to reconsider. This argument indicates that Mr. McNary believes that the district court should have reviewed the magistrate judge's denial of his motion for appointment of counsel before the magistrate judge held a trial on his case. Although Mr. McNary maintains that the appointment of counsel is a dispositive matter, it is actually a nondispositive matter that falls under Federal Rule of Civil Procedure 72(a). Rule 72(a) and 28 U.S.C. § 636 do require district court review of an objection to a magistrate judge's nondispositive order, but they do not require that this review take place before the magistrate judge issues her report and recommendation. The district court considered Mr. McNary's objection to the denial of appointment of counsel when conducting its de novo review of the report and recommendation. Therefore, the district court's review of Mr McNary's objection was not improper and the district court did not abuse its discretion in declining to appoint counsel.
 
 II. WITNESS FEES
 
 11
 Mr. McNary next argues that, because he was granted IFP status, the district court improperly refused to issue subpoenas for his requested witnesses on the basis that he was unable to pay witness fees pursuant to 28 U.S.C. § 1821. Prior to trial, Mr. McNary requested that 13 non-inmate witnesses be subpoenaed for trial, all but two of whom were defendants in this case. The magistrate judge stated that the IFP statute "does not provide the court with authority to pay or waive the statutory daily attendance fee and mileage expenses." However, we do not reach this issue because Mr. McNary failed to timely object to either of the magistrate judge's two orders addressing witness fees, and therefore waived his right to consideration by the district court.[7] Fed.R.Civ.P.72(a). United States v. Brown, 79 F.3d 1499, 1504 (7th Cir.), cert. denied, 117 S.Ct. 196 (1996).
 
 
 12
 III. DISTRICT COURT'S ADOPTION OF REPORT AND RECOMMENDATION
 
 
 13
 Mr. McNary next asserts that the district court clearly erred in adopting the magistrate judge's report and recommendation, finding that Mr. McNary's Eighth Amendment right was not violated. In making this assertion, Mr. McNary challenges the district court's factual findings and credibility determinations relating to whether an, of the correctional officers beat Mr. McNary while he was being removed from his cell.
 
 
 14
 This court will not conclude that a finding of fact is clearly erroneous "unless upon review it is left 'with a definite and firm conviction that a mistake has been committed.' " United States v. Herrera, 54 F.3d 348, 356 (7th Cir.) (quoting United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1989)), cert. denied sub nom. Crespo v. United States, 116 S.Ct. 192 (1995). After a de novo review of the report and recommendation, the district court found that the officers' testimony that Mr. McNary was not beaten was more credible than Mr. McNary's testimony. This court does not reconsider credibility determinations of the district court. United States v. Hickok, 77 F.3d 992, 1006 (7th Cir.), cert. denied, 116 S.Ct. 1701 (1996).
 
 
 15
 Further, when correctional officers are accused of using excessive force in handling an inmate, the proper inquiry is " 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir.1994) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)), see Wilson v. Williams, 83 F.3d 870, 876-877 (7th Cir.1996). "Factors relevant to our inquiry include the nature and extent of the harm, the need for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." Lunsford, 17 F.3d at 1581. The factual findings of the district court are that Mr. McNary resisted the extraction by diving under his bed and that the prison officials responded with the necessary, but not excessive, amount of force. These findings are not clearly erroneous as they are supported by the testimony of the officers and the fact that the prison records do not reflect that Mr. McNary received a significant injury.
 
 
 16
 Mr. McNary also asserts that the fact that the videotape recording of his removal from the cell was lost indicates that it contained evidence that was unfavorable to appellees. However, the record contains information to support the district court's determination that the tape was lost as a result of the death of Lieutenant Newson, rather than deliberately lost. Therefore, because the findings of the district court are supported by the record and based on credibility determinations, the district court did not commit clear error in adopting the report and recommendation of the magistrate judge.
 
 
 17
 IV. DISMISSAL OF CLAIMS AGAINST TWO DEFENDANTS
 
 
 18
 Lastly Mr. McNary argues that the magistrate judge clearly erred by dismissing claims against Officers Woolslayer and Barnes pursuant to their motion for involuntary dismissal after the close of Mr. McNary's evidence. These two officers watched the extraction through a window from outside the building and at most knew that the extraction was going to take place before it happened. Their conduct does not give rise to liability because they were not personally involved in the alleged denial of Mr. McNary's constitutional rights as is required to recover damages under § 1983. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir.1995). Therefore, the magistrate judge did not improperly dismiss the claims against Officers Barnes and Woolslayer.
 
 V. CONCLUSION
 
 19
 The district court did not abuse its discretion in refusing to appoint counsel because this case was straightforward and Mr McNary was able to competently present his case. Mr. McNary waived his right to review of the issue of payment or waiver of witness fees because he failed to make a timely objection to the magistrate judge's denials on this issue. The district court did not clearly err in finding that Mr. McNary was not beaten based on its findings of fact and credibility determinations. The district court also did not err in dismissing claims against two officers.
 
 
 20
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a): Cir. R. 34(f)
 
 
 [1]
 Mr. McNary is currently housed at the Pendleton Correctional Facility in Pendleton, Indiana
 
 
 [2]
 The correctional officers include Officer Donald M. Norman, Sergeant L. Taylor, Officer Radomir Samardzich, Sergeant Vincent Lee, Lieutenant Rubin Newson, Sergeant Frank Staples, Officer Ted Woolslayer, Officer Michael Barnes, Officer Thomas Brown, Officer Gary Ware, Officer Mark Smith, and Officer Michael Haas
 
 
 [3]
 The district court also denied Mr McNary's motion for a new trial, or to alter or amend the judgment, made pursuant to Federal Rule of Civil Procedure 59(e)
 
 
 [4]
 Although not defined in the record, the bed roll is presumably the mattress that is placed on top of the bed frame
 
 
 [5]
 When an inmate is told to "cuff up," a small opening in the cell door, called the cuff port, is opened and the prisoner places his hands through the port so that he can be handcuffed
 
 
 [6]
 Prior to filing his brief in this appeal, Mr McNary filed a motion for the appointment of counsel with this court, which we denied
 
 
 [7]
 The appellees inaccurately state that Mr. McNary made a timely objection to the magistrate judge's January 31, 1996, second order on witness fees. The appellees apparently assumed that Mr. McNary's objection filed on January 31, 1996, related to the witness issue, in fact, however the objection related solely to the denial of appointment of counsel from the magistrate judge's order of January 18, 1996