In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-1620

BENJAMIN PRUITT,

*Plaintiff-Appellant,*

*v.*

STEPHEN D. MOTE, *et al.*,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Central District of Illinois.
No. 03-1030—**Harold A. Baker**, *Judge.*

---

ARGUED NOVEMBER 14, 2006—DECIDED DECEMBER 28, 2006

---

Before EASTERBROOK, *Chief Judge*, and POSNER and COFFEY, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* A jury found for all defendants in this suit under 42 U.S.C. §1983. Benjamin Pruitt, the plaintiff, does not contest the accuracy of the instructions or any of the district judge's rulings admitting or excluding evidence. What he does contend is that the judge should have recruited a lawyer for him. See 28 U.S.C. §1915(e)(1). Judges do not "appoint" counsel for indigent parties in civil litigation. See *Mallard v. United States District Court*, 490 U.S. 296 (1989). Still, many members of the bar are willing to take cases that federal judges identify as worthy of legal assistance *pro bono publico*. Because §1915(e)(1) does not give anyone an

entitlement to such representation, however, or even to the benefit of having a judge play recruiting officer, we have held that a district judge's decision to allow private lawyers to decide whether to take any given case is subject to deferential review. See, e.g., *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006); *Jackson v. McLean County*, 953 F.2d 1070, 1071-72 (7th Cir. 1992). Pruitt insists that the district judge abused his discretion in declining to recruit a lawyer for him.

Pruitt contends that, while he was confined at Pontiac Correctional Center in Illinois, Michael Mesch (one of the guards) took him into a bathroom and began to fondle his penis. When one of Mesch's superiors arrived unexpectedly, Mesch pretended to be conducting an authorized search; Pruitt was able to escape further sexual contact. Pruitt filed written complaints, which (he maintains) the other defendants ignored; one of them supposedly told him to stop writing, lest he come to additional harm. Pruitt does not contend, however, that he was again sexually assaulted or that the defendants have retaliated on account of his complaints.

At the one-day trial, Pruitt gave the only testimony supporting his contentions. He called some other inmates as witnesses, but none corroborated his version of events. Mesch testified that he did not assault Pruitt, whose effort to undermine Mesch's story on cross-examination was ineffectual. The other defendants also testified. Two (Stephen D. Mote and Patricia Boedecker) insisted that they had not received either oral or written complaints from Pruitt. A third (Adella Jordan-Luster) testified that she *had* received a written complaint, which she forwarded to the Internal Affairs department as regulations require. The final defendant (Wesley G. Wiles) testified that he received this complaint, questioned both Pruitt and Mesch about it, and closed the file after determining that Pruitt's allegation was false. None of

these defendants wavered during the brief cross-examination that Pruitt conducted. The jury did not take long to return a verdict in defendants' favor. If the jurors believed Mesch's testimony, none of the legal apparatus—such as the definition of "deliberate indifference" needed to establish the mental component of a claim under the eighth amendment against guards who fail to intervene to prevent or stop a sexual assault, see *Farmer v. Brennan*, 511 U.S. 825 (1994)—made the slightest difference.

Pruitt maintains that, as an uneducated prisoner, he could not grasp legal concepts such as "deliberate indifference" (many lawyers don't get that one either) and had no idea how to conduct an effective cross-examination. What's more, he could not present his own testimony effectively in narrative form (the district judge helped out by asking questions, and Pruitt worries that the jurors might have inferred that the judge was hostile, as he did not question the defendants). Finally, Pruitt tells us, he was unprepared for trial because he did not know what to ask for in discovery.

All of this is true of every suit in which a non-lawyer presents a case to a jury. (It is true of many lawyers as well; effective trial advocacy is a scarce skill.) This was a relatively simple trial, a brief swearing contest. To decide whether Mesch is culpable, the jury had to determine who was telling the truth. (Once it found that Mesch is not culpable, the other defendants prevailed automatically. The complications posed by concepts such as "deliberate indifference" mattered only for the other defendants, and then only if Mesch sexually assaulted Pruitt.) If the difficulty that a *pro se* litigant encounters in conducting such a trial were enough to require the district judge to recruit counsel, then we would have a *per se* rule rather than a discretionary choice: the rule would be "a plaintiff is entitled to counsel at every jury trial." (Alterna-

tively, the rule could be that, if the case makes it past a motion to dismiss, then the judge must find counsel for discovery and trial.) It would be a *per se* rule because the judge would need to apply it before trial, rather than in the light of actual performance *at* trial. Although a legislature could adopt such a rule, it cannot be located in §1915(e)(1) or this circuit's cases.

Instead we allow the district judge to make a case-by-case assessment of the trial's difficulty and the plaintiff's ability to cope. Whatever an appellate court knows about the difficulty of conducting trials, a district judge knows more—for the district judge observes how the plaintiff handles himself during the runup to trial and whether defendants' stories are the sort of tales that only a professional advocate could pierce. Transcripts may convey the flavor while falling short of the full story. That's why appellate courts do not substitute their judgment for district judges on matters of this kind.

If we are to replace a discretionary approach with a *per se* rule, we must consider the panoply of available rules. These run from "never recruit counsel" on one end to "always recruit counsel for non-frivolous claims" on the other. The "never recruit" approach relies on competition in the marketplace for legal services. See *McKeever v. Israel*, 689 F.2d 1315, 1323 (7th Cir. 1982) (Posner, J., dissenting). Contingent-fee lawyers take many weak cases; if a given plaintiff cannot persuade any lawyer to assist, his case must be weaker than the most feeble of these. When a judge nonetheless directs legal assistance to that case, he displaces the collective judgment of the bar and likely leaves some other client unrepresented in the process—for the lawyer recruited to assist Client X won't have time to work for Client Y. That X is a prisoner, and Y a free person seeking help for injuries from an auto accident, is a weak reason to divert legal services in X's direction.

An "always recruit in non-frivolous cases" approach, at the other end of the spectrum, would rest on the fact that prisoners have a more difficult time locating private counsel than do free persons and often are unable to communicate through the mail the salient particulars of their situation. Pruitt sent letters to three lawyers; none was willing to assist him, perhaps because Pruitt's letters were so vague that counsel could not tell whether Pruitt had even a glimmer of a claim. A judge may learn more of the particulars in the course of the litigation, and if the claim passes initial screening (that is, if it is not frivolous) it could be inferred that this is the sort of claim that would attract counsel in the private market if the plaintiff were not a prisoner. Since prisoners are bad lawyers, the quality of justice could be improved by automatic appointment at this stage.

There are many intermediate approaches. One possibility would be the rule "always recruit counsel if the evidence is strong enough to call for a trial and the damages, if the plaintiff prevails, would be substantial." That would screen out the many cases in which, even if the prisoner wins, the award will be $1 in nominal damages, and it would approximate the sort of filter that lawyers apply when deciding which cases to take voluntarily. See Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1602-03 (2003) (substantial damages are rare, and the median award when prisoners prevail is approximately $1,000). Yet when the strong-claim-plus-substantial-damages condition is fulfilled, a plaintiff should be able to attract counsel without the need for a judge's aid: it should be enough to send out copies of the order denying summary judgment.

None of these approaches entails the exercise of judicial discretion—yet it is the discretionary middle ground that our cases have followed. What may be said for this middle ground is that even prisoners sometimes can

make adequate presentations, especially in simple cases, and that district judges (who see not only the prisoners and the evidence but also the quality of other suits that do attract assistance in the private market) are best situated to put all of the considerations in context. That has been this circuit's understanding. We would have to overrule many decisions to adopt the *per se* rule that counsel must always be recruited when a prisoner's suit reaches discovery or trial.

One of the cases that would have to be overruled is *Farmer v. Haas*, 990 F.2d 319 (7th Cir. 1993), which holds that events at trial cannot be used to second-guess a district judge's reasonable pre-trial decision—as it is before trial that the judge must make the decision. The judge must predict how well the plaintiff will handle himself, how the testimony and cross-examination may develop, and so on. Farmer, like Pruitt, was a non-lawyer prisoner; the trial promised to be a swearing contest, which (according to *Farmer*) made it sensible for the district judge to withhold assistance in recruiting counsel. 990 F.2d at 322. As we observed in *Farmer*, when predicting how well a prisoner is apt to do at trial the district judge has a great advantage over the appellate court, for the district judge prepares for trial (working the case through the final pretrial order) in a way that an appellate court does not. If the decision not to recruit counsel for Farmer was within the district judge's discretion (as we held), so too was the decision not to recruit counsel for Pruitt.

Pruitt relies mainly on what happened *at* trial, and appellate judges are comfortable dealing with trial transcripts; yet under this circuit's approach, which *Farmer* exemplifies, events at the trial cannot properly be used to make a decision by hindsight. "If the judgment was sensible when made, the fact that after trial it is apparent that the plaintiff was not competent to try the

case after all will not establish error." 990 F.2d at 322, citing (among other decisions) *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985), and *Eads v. Secretary of HHS*, 983 F.2d 815, 817 (7th Cir. 1993). Before trial—the only time that mattered—the district judge not only received Pruitt's written submissions but also had the benefit of seeing him during two conferences conducted by video link to the prison. Our dissenting colleague observes that "the record doesn't indicate how long either conference lasted" (slip op. 10-11), but that's not material. These conferences gave the district court a basis for assessing whether Pruitt could handle his own case; we do not have videotapes of these conferences and therefore have *no basis at all* for disagreeing with the district court's pretrial assessment. All we have are the trial transcript—which *Farmer* holds to be irrelevant—and the fact that Pruitt is a prisoner without legal training, which would be controlling only if we were to establish a *per se* rule that district judges must recruit counsel to assist prisoners in jury trials. (The dissent's proposed exception for disbarred lawyers litigating from prison would not make the rule less a *per se* exercise or align itself with our cases; Farmer was not a disbarred lawyer.)

It is not as if the Supreme Court had established that *pro se* litigants never can get fair trials. Until *Gideon v. Wainwright*, 372 U.S. 335 (1963), many criminal trials were conducted without counsel for the defense. When (in *Gideon*) the Court overruled *Betts v. Brady*, 316 U.S. 455 (1942), which held that judges have discretion to distinguish between cases in which litigants really need counsel and those in which they don't, it was not because the Court doubted the trial judges' ability to choose. It was because, *Gideon* held, the sixth amendment creates a *per se* entitlement to counsel. Since *Gideon*, the Court has held that judges retain discretion to choose whether to secure counsel for the accused in situations to which

the sixth amendment does not apply, such as summary courts martial, see *Middendorf v. Henry*, 425 U.S. 25 (1976), criminal trials that do not lead to imprisonment, see *Argersinger v. Hamlin*, 407 U.S. 25 (1972), and child-custody disputes, see *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981). What the Court held in these decisions is not simply that the sixth amendment does not guarantee appointed counsel in such situations, but also that unrepresented litigants are sufficiently able to handle their own presentations that a trial is compatible with the due process clause. The rejection of a *per se* rule "if trial, then counsel" in *Middendorf* and *Argersinger* and *Lassiter* means that it would be imprudent for this circuit to create such a rule under §1915(e)(1), which does not prescribe how district judges exercise their discretion.

To say that a district judge has discretion is to say that a plausible decision *either way* will be affirmed. The district judge did not abuse his discretion in thinking that a swearing contest was apt to be within Pruitt's abilities, though a decision the other way likewise would be sustained. It is therefore unnecessary to consider when, if ever, a district judge must recruit counsel in a case that is surely too complex for a given *pro se* litigant, but also too weak to attract representation on contingent fee from even a well-informed bar.

AFFIRMED

POSNER, *Circuit Judge*, dissenting. A district judge is authorized to request a lawyer to represent an indigent party in a civil case. 28 U.S.C. § 1915(e)(1). The statute

sets forth no criteria for the exercise of this authority, but the case law in this circuit (1) requires that the indigent try to find a lawyer to represent him voluntarily, as it were, before he turns to the court, e.g., *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004), and, the quest having failed, (2) entrusts the decision whether to request counsel to the discretion of the district judge, e.g., *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006), (3) implying deferential review by the court of appeals. E.g., *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993). As an original matter, one might have thought that if the indigent plaintiff couldn't find a private lawyer to handle his case on a contingent-fee or other basis (the lawyer might be satisfied with the prospect of a fee award should the plaintiff prevail), this would show that his case had no merit and should therefore be dismissed out of hand. This is the preferred position of the majority, and I have considerable sympathy with it. But it is not the law, *Gil v. Reed*, *supra*, 381 F.3d at 657-58; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992), and it would probably require a revision of section 1915(e)(1) to make it the law. The statute implies that Congress is not content to leave the representation of indigents in civil cases, or even just in civil nonequity cases (for it is difficult to see how an indigent could obtain representation in a case in which there were no monetary stakes), entirely to the market.

Deferential review of the district judge's refusal to request a lawyer to take an indigent's case makes sense not only because of the absence of statutory guidance and the quintessentially judgmental character of a determination of whether a litigant can represent himself effectively, but also because the district judge has the advantage over the appellate judges of having observed the litigant at first hand, which should be a considerable aid in assessing the litigant's competence. Because of the

huge number of prisoner suits, very few of which are meritorious, district judges are naturally and rightly reluctant to pepper the bar with requests to represent prisoners.

So Pruitt faces a steep uphill fight to get the district judge's ruling denying him counsel reversed. But I am persuaded that the ruling should be reversed even under a highly deferential standard of appellate review.

I have not found any case in which a prisoner as poorly educated as Pruitt is was denied the assistance of counsel in a jury trial. The vast majority of prisoner civil rights cases are disposed of on a motion to dismiss or a motion for summary judgment, and the prisoner should be able to establish without assistance of counsel that he has enough evidence of each element of his claim (and enough evidence to rebut any defenses raised by the defendant) to survive summary judgment. Pruitt, in his pretrial submissions, had the assistance of a "jailhouse lawyer," but not at the trial. Rarely can a prisoner show a need at the pretrial stage for a lawyer that is so acute that the denial of his request can be thought an abuse of discretion.

This case is unusual because it survived the preliminary rounds and went to a jury. Pruitt renewed his request for assistance of counsel after the judge set the case for trial, and I think it is clear beyond any reasonable doubt that, lacking as he does any education beyond the sixth grade and any employment or other experience that might rectify that deficit, he could not have been expected to be able to conduct a jury trial in which the defendants had competent lawyers, as they did. Nor can we assume that the district judge, having observed Pruitt's conduct in the courtroom before the trial began, had insights denied to us into his ability to represent himself. Pruitt hadn't been in the courtroom yet. He had participated in two pretrial conferences by video, but the record doesn't indicate how

long either conference lasted. His written pretrial submissions, some made with the assistance of a jailhouse lawyer, would not have revealed his forensic ability.

The trial of a jury case is an art, and a demanding one; the state's lawyer conceded at the argument of the appeal that *he* was not himself competent to conduct a jury trial. He said, though, that this was an easy case, but he was wrong. It was a *simple* case, because it was a swearing contest between the plaintiff, who said he had been sexually abused by one of the defendants, and the defendants (the alleged abuser plus other guards), who said he hadn't been. But difficulty and complexity are not synonyms. This was a difficult case because the outcome depended entirely on which side created the better impression in the eyes of the jury. Lawyers in our system coach their witnesses in advance of trial in an effort to make them seem more persuasive to jurors; Pruitt had no one to coach him. Lawyers cross-examine the opposing side's witnesses; Pruitt had no experience in cross-examination. And not knowing the rules of evidence, he could not object to improper testimonial or documentary evidence tendered by the defendants. He was unable to conduct a direct examination of himself (he is not a ventriloquist), so the judge had to question him, as in a Continental-type ("inquisitorial") trial.

Pruitt proved incapable of giving a coherent opening or closing argument. After a good beginning to his opening statement ("Each one of my witnesses is going to verify that Officer Mesch just harassed me everyday"), he began to disintegrate. He said "At this time, the only thing I could say is that the witness they got now, I don't know if they are going to verify that they seen me went to the washroom at the time or just been seeing me out—I mean coming to the chow. I'm sorry. I'm sorry. I'm kind of nervous. Let's see. What do you want me to say now? What do you want me to begin? Like what?" The judge asked him

whether he was going to tell the jury what the evidence would show, and specifically whether he had complained about the defendant's conduct. Pruitt's answer was incoherent: "No, they should have been charged me why they let the officers—why they do something to him. I ain't looking to go to seg or try to go to Tamms or nothing like that. I am trying to go home. I ain't trying to catch no time in the penitentiary. It's just telling me put a lawsuit or something." The judge then asked him whether that was his opening statement, and Pruitt replied: "I don't know. Judge, I don't know how to defend myself. I don't know where to begin."

The judge then conducted in effect a direct examination of Pruitt. The defense counsel then cross-examined him and after that conducted direct examination of the defense witnesses. Pruitt objected to their testimony only when prompted by the judge, and he conducted perfunctory cross-examination and did not object to any of the documentary evidence presented by the defense. He made no objections or suggestions at the instructions conference. His closing argument occupies only a page of transcript, though he did offer brief rebuttal argument as well; but his arguments amounted to no more than that the defense witnesses were lying. Defense counsel's lucid and detailed closing argument occupies five and a half pages of the transcript.

Pruitt's incompetence at playing lawyer doomed his case. Yet it is not as if his case were weak. The abuses that he alleged are not uncommon in prisons. Had the jury chosen to believe him, this would not have struck anyone as a miscarriage of justice, which is why at the close of the evidence the judge denied the defendants' motion for judgment as a matter of law. He said that if the jury believed Pruitt, "it would be a clear sexual assault. . . .I am going to give the case to the jury. No question about it."

This case should help us understand why the Supreme Court does not allow a defense of harmless error to a claim of denial of the right to counsel in criminal cases. *Rose v. Clark*, 478 U.S. 570, 577-78 (1986); *Chapman v. State of California*, 386 U.S. 18, 23 n. 8 (1967). When a party is not represented, it is often impossible to determine whether he had a strong or a weak case. But since it is apparent that had Pruitt been represented by a competent lawyer he might well have won his case, it was a serious, though not an ill-intentioned, mistake to deny his request for counsel once the judge decided that the case was going to be decided by a jury.

I am not suggesting that a prisoner who survives summary judgment is always entitled to a lawyer, even if a jury trial is looming; for some prisoners are capable of conducting such a trial (I'll mention one in a moment). I am not proposing a "per se" rule with an exception for disbarred lawyers. (The term "per se" appears seven times in the majority opinion; "per se" rule is a term from antitrust law, where it is a frequent source of mischief.) The majority opinion casts about for a suitable rule to govern the issue, and finding none concludes that the decision is a matter for the exercise of discretion by the district judge. I agree. But I do not agree that the exercise of that discretion is unreviewable, which is the tenor of the majority opinion. Ignoring the cases that hold that the inability of an indigent prisoner to interest a lawyer in his case is not an automatic basis for refusing to request a lawyer to represent him, the majority intimates at the end of its opinion that there might *never* be a case so difficult that the refusal of the district judge to request a lawyer to represent the plaintiff would be an abuse of discretion.

Many prisoners are better educated than Pruitt, or have extensive experience in the courtroom. Some are jail-house lawyers; some are disbarred lawyers; some have

little education or experience but are articulate and have a knack for the adversary process; and some cases really are quite simple. So there will be some cases in which, though they are headed for a jury trial, the district judge would not be abusing his discretion to refuse to request a lawyer for the plaintiff. But this is not such a case.

*Farmer v. Haas*, *supra*, which my colleagues overread, *was* such a case. We were at pains to assure ourselves that Farmer was competent to represent herself. As we explained, "When Farmer moved for counsel in April 1991, a week before trial, she had been litigating since February 1988 and had prosecuted a successful appeal to this court. . . . Besides being an experienced litigator, Farmer has a history of fraud, arguing the possession of an intelligence superior to that of a criminal who relies on brawn rather than brains. The transcript of the trial discloses a shrewd cross-examination by Farmer of one of the defendants on the issue of forgery, bringing out all the contradictions and implausibilities in that defendant's testimony. It is true, as her appointed counsel in this court points out, that Farmer had difficulty coping with the objections that the defendants' counsel made to her direct testimony. But her counsel has made no effort to show that the objections were groundless, so that the presence of a lawyer to contest the objections would have made a difference." 990 F.2d at 322-23. The difference in competence between Farmer and Pruitt is striking, but goes unremarked by my colleagues, who are content to quote language in *Farmer v. Haas* that supports their decision. It is a disservice to a court to wrench the general language in its opinions out of context.

I do not wish to be understood as suggesting that a prisoner reasonably adjudged in advance of trial to be capable of representing himself should be entitled to a new trial, and thus a second bite at the apple, if he underperforms at trial. The judgment of competence is

to be made before the trial begins; the relevance of my discussion of Pruitt's performance at trial is merely to show that the error in failing to request assistance of counsel for him was not harmless, as it would have been had he done a tolerable job. I am suggesting only that a judge who has ordered a jury trial should request a lawyer for a prisoner who plainly lacks the educational or vocational background that would enable him to conduct such a trial with minimum competence. To insist that someone with a sixth-grade education, and nothing to suggest forensic competence beyond what so modest an educational attainment implies, conduct a jury trial without a lawyer makes a travesty of the Seventh Amendment.

The cases that reject a right to counsel in civil cases, such as *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981), are inapposite. (Nor can those cases be read as holding that *every* civil litigant is capable of conducting a trial without the assistance of counsel. That would be absurd, as well as inconsistent with section 1915(e)(1).) Pruitt claims no such right. He is not asking the government to pay for a lawyer for him; he is merely asking the district judge to help him find a volunteer.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*